**Affirmed and Opinion filed October 2, 2014.**



In the

# Fourteenth Court of Appeals

---

NO. 14-13-00442-CV
NO.14-13-00462-CV

---

## PAUL STEVEN JACOBS, Appellant

## V.

## MELISSA ELLEN FIELDS JACOBS, Appellee

---

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause Nos. 2011-14576-A & 2011-14576-B**

---

### O P I N I O N

In these consolidated appeals, appellant Paul Steven Jacobs (Paul) challenges the trial court's orders granting final summary judgment to appellee Melissa Ellen Fields Jacobs (Melissa) with regard to garnishment of nonexempt funds and assets within Paul's accounts held by Morgan Stanley Smith Barney LLC and IberiaBank Corporation, respectively, in her action to enforce a mediated settlement agreement incident to the parties' divorce. Paul also challenges the trial

court's orders denying Paul's motions to vacate or dissolve the prejudgment writs of garnishment and orders of issuance of writ of garnishment. Finally, Paul challenges the trial court's denial of his motions to compel arbitration and for a stay. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This court previously discussed background relevant to this appeal in a prior interlocutory appeal brought by Paul, which we briefly discuss and supplement as necessary. *See Jacobs v. Jacobs*, No. 14-12-00755-CV, 2013 WL 3968462 (Tex. App.—Houston [14th Dist.] Aug. 1, 2013, no pet.) (mem. op.) ("*Jacobs I*"). In November 2011, Paul and Melissa entered into a Mediated Settlement Agreement (MSA) relating to the division of property upon their divorce. After disputes arose in finalizing the divorce documents, Melissa moved to compel arbitration under the terms of the MSA, which provides:

> **Arbitration.** The parties shall submit all (a) drafting disputes, (b) issues regarding the interpretation (but not enforcement) of this [MSA], and (c) issues regarding the intent of the parties as reflected in this [MSA] to Thomas O. Stansbury as an arbitrator, whose decision shall be binding on the parties, including decisions on the payment of attorneys' fees and arbitration costs incurred as a result of the arbitration.

The trial court so ordered arbitration. After the arbitration, on January 18, 2012, the trial court signed an agreed final decree of divorce, approved by both parties as to both form and substance. Neither party appealed.

When Paul allegedly refused to transfer certain assets within his control to Melissa, Melissa sued Paul in a new action to enforce the property division the parties agreed to in the MSA. The trial court granted injunctive relief to Melissa in temporary orders signed August 1 and 21, 2012. This court affirmed those orders.

2

*Id.* at \*3, \*4.  In doing so, we concluded that because the claims Melissa asserts in her enforcement action are expressly excluded from the scope of the MSA's arbitration provision, the trial court did not lack jurisdiction or authority to issue those temporary orders, and did not err or abuse its discretion in failing to order arbitration of Melissa's claims.  *Id.* at \*3.

The trial court moved forward with Melissa's enforcement claims while Paul's interlocutory appeal was pending.  On November 13, 2012,[1] Melissa filed applications for prejudgment writs of garnishment against Paul's nonexempt funds and assets held by garnishees Morgan Stanley and IberiaBank, respectively.  Prejudgment writs of garnishment were issued that same day.

Both Morgan Stanley and IberiaBank were served with the garnishment proceedings and filed answers.  Melissa unsuccessfully attempted personal service of the garnishment proceedings upon Paul at both his business and residential addresses.  Melissa simultaneously pursued service upon Paul by certified mail.  *See* Tex. Rs. Civ. P. 21a, 663a.  These mailings were returned unsigned, and marked "unclaimed" and "refused."[2]  Paul did not answer.  On March 7, 2013, Melissa filed motions for final summary judgment on her prejudgment garnishment claims.  On April 8, 2013, two days before a hearing on Melissa's motions, Paul filed motions to vacate or dissolve the prejudgment writs of

[1] Also on November 13, 2012, after securing the prejudgment writs of garnishment, Melissa filed a motion for partial summary judgment on her breach of contract claims.  The trial court signed a partial summary judgment order in Melissa's favor on January 30, 2013.  On February 18, 2013, the trial court denied Paul's objection based on arbitration and motion to stay the proceeding pending mandamus.  That same day, the court also signed a modified partial summary judgment nunc pro tunc to correct clerical errors and granted a severance, making the order final and appealable.  Paul failed to timely appeal, and we dismissed for want of jurisdiction.  *Jacobs v. Jacobs*, No. 14-13-00460-CV, 2013 WL 5603470, at \*1 (Tex. App.—Houston [14th Dist.] Oct. 10, 2013, no pet.) (mem. op.).

[2] Melissa also sent the garnishment documents to Paul's business and residential addresses via first-class mail.  These mailings were not returned.

3

garnishment and orders of issuance of writ of garnishment.

The trial court held an evidentiary hearing on both Melissa's and Paul's motions on April 10, 2013. That same day, the trial court signed orders denying Paul's motions to vacate or dissolve and granting Melissa's motions for final summary judgment in each of the garnishment proceedings. This court granted Paul's motions extending time to file his notices of appeal, and ordered his appeals consolidated.

Paul, representing himself, argues four issues in this appeal: (1) the trial court had no jurisdiction, or abused its authority or discretion, in issuing its April 10, 2013 final summary judgments; (2) the trial court had no jurisdiction, or abused its authority or discretion, in issuing its April 10, 2013 orders denying Paul's motions to vacate or dissolve; (3) this court must review de novo the trial court's denial of Paul's motion to compel arbitration; and (4) the trial court abused its discretion in denying Paul's motion to stay.

## II.     ANALYSIS

### A. Law of the case

To begin, Melissa argues the law of the case as established by this court in *Jacob I* mandates that all of Paul's issues be overruled. We conclude that the law of the case precludes Paul from challenging this court's earlier holdings.

The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *City of Houston v. Precast Structures, Inc.*, 60 S.W.3d 331, 337 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g). The doctrine is based on public policy and is intended to achieve uniformity of decision, as well as

4

judicial economy and efficiency. *Hudson*, 711 S.W.2d at 630. The doctrine, which is aimed at putting an end to litigation, applies to questions of law but not fact. *Id.* "Application of this doctrine is flexible and must be left to the discretion of the court and determined according to the particular circumstances of the case." *Precast Structures*, 60 S.W.3d at 337. The doctrine does not necessarily apply where the issues or facts presented on successive appeal have substantially changed. *See Hudson*, 711 S.W.2d at 630.

Melissa contends that this court's prior decision[3] governs any jurisdictional and arbitration-related questions in this appeal. We agree. We previously determined that Melissa's claims and factual assertions were made for the purpose of enforcing terms of the MSA. *Jacobs I*, 2013 WL 3968462, at *2. We interpreted the arbitration provision in the MSA, compared it to Melissa's affirmative pleading, and concluded that her asserted claims were expressly excluded. *Id.* at *2-3. We have already answered these legal questions—whether the parties' agreement imposed a duty to arbitrate their particular dispute[4] and whether the trial court properly exercised jurisdiction over Melissa's claims[5]—against Paul. Paul asserts virtually the same arguments in this current appeal.

That Melissa continues to seek enforcement and collect on the final breach of contract judgment through the underlying garnishment proceedings does not affect the trial court's jurisdiction. *See Henry v. Ins. Co. of N. Am.*, 879 S.W.2d 366, 368 (Tex. App.—Houston [14th Dist.] 1994, no writ) (garnishment is

---

[3] Paul was granted two extensions to file his petition for review; however, the Texas Supreme Court denied his third request.

[4] *See Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist. 1994, writ denied).

[5] *See TRST Corpus, Inc. v. Fin. Ctr., Inc.*, 9 S.W.3d 316, 320 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

"separate suit brought to enforce the judgment"); *Baca v. Hoover, Bax & Shearer*, 823 S.W.2d 734, 738 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (ancillary garnishment suit "takes its jurisdiction from the main suit").

We conclude that the trial court did not lack jurisdiction or authority to enter its final summary judgments or its orders denying Paul's motions to vacate or dissolve in the garnishment proceedings. Nor, to the extent at issue,[6] did the court err or abuse its discretion in failing to order arbitration and stay Melissa's claims.

We overrule Paul's first, second, third, and fourth issues.

## B. Proper service under rules 663a and 21a

Next, although not expressly identified as an issue, Paul challenges the trial court's rulings on the basis that, as he asserted below in his motions to vacate or dissolve, he was not "properly served or noticed" with the garnishment writs.[7] In response to Paul's motions to vacate or dissolve, Melissa asserted, and presented evidence in support of, proper service through Paul's constructive notice.

We review a trial court's ruling on a motion to dissolve a writ of garnishment for abuse of discretion. *See Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 705 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A trial

---

[6] Although the trial court denied Paul's objection and request for a stay based on arbitration on February 18, 2013, after it had granted partial summary judgment in Melissa's favor, Paul failed to perfect any appeal from that severed judgment. Moreover, Paul has not pointed us to, and we have not located, where in the instant record Paul advanced or the trial court denied any motion to compel arbitration or for a stay for arbitration.

[7] Melissa insists that Paul has waived this undesignated issue pursuant to Texas Rules of Appellate Procedure 38.1(f) and 38.1(i). Melissa primarily relies on *Bolling v. Farmers Branch Independent School District*, 315 S.W.3d 893, 897 (Tex. App.—Dallas 2010, no pet.). However, unlike the appellant in *Bolling*, Paul's brief provides more than just his personal opinion and from it we are fairly able to discern what question of law we will be answering. *See id.* at 896–97; *see also Morton v. Nguyen*, 412 S.W.3d 506, 509 (Tex. 2013) (noting its instruction to courts of appeal to construe briefing requirements reasonably but liberally in concluding that appellate court erred by finding briefing waiver).

court abuses its discretion if it acts without reference to guiding rules and principles or in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). An abuse of discretion does not occur as long as some evidence of substantive and probative character supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). Where, as here, no findings of fact or conclusions of law were requested or filed, we proceed to determine whether some evidence supports the trial court's implied findings of fact as to Melissa's compliance with the service rules. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). We will affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *Id.*

A garnishment application "shall comply with all statutory requirements and shall state the grounds for issuing the writ and the specific facts relied upon by the plaintiff to warrant the required findings by the court." Tex. R. Civ. P. 658. For the prejudgment garnishment at issue here, the statutory requirements are that the plaintiff sues for a debt and provides an affidavit stating the debt is just, due, and unpaid; within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt; and the garnishment is not sought to injure the defendant or the garnishee. Tex. Civ. Prac. & Rem. Code § 63.001(2) (West 2011).

Rule 663a provides that the defendant debtor in a garnishment action shall be served with a copy of the writ of garnishment, the application, accompanying affidavits and orders of the court in any manner prescribed for service of citation, or as provided in rule 21a. Tex. R. Civ. P. 663a. Rule 21a authorizes service in person, by agent, by courier receipted delivery, or by certified or registered mail, to the party's last known address. Tex. R. Civ. P. 21a; *Ashworth v. Brzoska*, 274

7

S.W.3d 324, 330 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Service by certified mail is complete upon deposit of the documents in a properly addressed envelope, postage prepaid, in a post office or official depository of the U.S. Postal Service. Tex. R. Civ. P. 21a; *Approximately $14,980.00 v. State*, 261 S.W.3d 182, 186 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A certificate by a party or an attorney of record, or the return of the officer, or the affidavit of any person showing an authorized method of service shall be prima facie evidence of the fact of service. Tex. R. Civ. P. 21a; *see Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005) ("[N]otice properly sent pursuant to [r]ule 21a raises a presumption that notice was received."); *Ashworth*, 274 S.W.3d at 330; *Approximately $14,980.00*, 261 S.W.3d at 186. *But see Ashworth*, 274 S.W.3d at 330–31 (noting regular mail does not raise rule 21a presumption of notice). The opposing party may present evidence to rebut the presumption that notice was received. *Ashworth*, 274 S.W.3d at 331; *Approximately $14,980.00*, 261 S.W.3d at 186, 189.

Even when a party does not have actual notice, the serving party may establish "constructive notice" by demonstrating compliance with rule 21a and presenting evidence that the intended recipient engaged in instances of selective acceptance or refusal of certified mail relating to the case. *See Gonzales v. Surplus Ins. Servs.*, 863 S.W.2d 96, 102 (Tex. App.—Beaumont 1993, writ denied), *overruled in part on other grounds*, *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682 (Tex. 2002). *Compare Dougherty-Williams v. Dougherty*, No. 01-13-01087-CV, 2014 WL 2809827, at *5–6 (Tex. App.—Houston [1st Dist.] June 19, 2014, no pet.) (mem. op.) (trial court acted within its discretion in imputing constructive notice—court as factfinder was free to find wife's testimony "that she never received notice from the post office about her numerous pieces of certified mail not credible, given that she later testified that she constantly, over the course

of the summer, inquired in person about her mail at the post office"), *Mark Rotella Custom Homes, Inc. v. Cutting*, No. 2-07-133-CV, 2008 WL 623785, at \*3–4 (Tex. App.—Fort Worth Mar. 6, 2008, no pet.) (mem. op.) (record established that lack of notice was due to selective and total refusal to accept service), *and Roberts v. Roberts*, 133 S.W.3d 661, 663 (Tex. App.—Corpus Christi 2003, no pet.) (trial court acted within its discretion in determining receipt of constructive notice "given the direct and uncontroverted testimonial evidence concerning [counsel's] refusal to accept her certified mail"), *with Myers v. Cnty. of Williamson*, No. 03-10-00410-CV, 2011 WL 6352288, at \*4 (Tex. App.—Austin Dec. 16, 2011, no pet.) (mem. op.) ("Without evidence that [defendant] dodged or refused delivery of certified mail, and in the absence of a certificate of service, we cannot impute constructive notice to him . . . ."), *Approximately $14,980.00*, 261 S.W.3d at 189 (no evidence presented that appellant "dodged or refused delivery of certified mail"), *and Etheredge v. Hidden Valley Airpark Ass'n, Inc.*, 169 S.W.3d 378, 382 (Tex. App.—Fort Worth 2005, pet. denied) (op. on reh'g) (same).

When returned certified mail is marked "refused," this tends to support that the defendant did in fact have notice. *Shackelford v. Cartercopters, LLC*, No. 02-10-00414-CV, 2011 WL 3835638, at \*4 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op.) (noting distinction between "unclaimed" and "refused" mail); *see Wheeler v. Hinson*, No. 03-11-00067-CV, 2013 WL 363650, at \*2 (Tex. App.—Austin Jan. 25, 2013, pet. denied) (mem. op.), *cert. denied*, 134 S. Ct. 1552 (2014) (trial court did not abuse discretion in denying petition for bill of review attacking default judgment where notice sent by certified mail per rule 21a and envelope marked "refused"). Defendants cannot thwart service by refusing certified mail. *See Shackelford*, 2011 WL 3835638, at \*4.

It is Paul's position that strict compliance with rule 663a requires Melissa to prove that he actually accepted service. *See Beggs v. Fite*, 130 Tex. 46, 106 S.W.2d 1039, 1042 (Tex. 1937) (because garnishment is an extraordinary and harsh remedy, such proceedings "cannot be sustained unless they are in strict conformity with statutory requirements"). Paul primarily relies on *Herring v. Norbanco Austin I, LTD.*, 735 S.W.2d 638 (Tex. App.—Austin 1987, writ denied),[8] *Walnut Equipment Leasing Co. v. J-V Dirt & Loam*, 907 S.W.2d 912 (Tex. App.—Austin 1995, writ denied),[9] and *Mendoza v. Luke Fruia Investments, Inc.*, 962 S.W.2d 650 (Tex. App.—Corpus Christi, no pet.).[10] It is correct that in these cases, the courts found the garnishor failed to strictly comply with rule 663a. However, we find all these cases are distinguishable in that the garnishors did not dispute their failure to comply with rule 663a.

In contrast, here, Melissa contends that she complied with rule 663a and that Paul was properly served with the writs of garnishment.[11] We proceed to determine whether a garnishor may strictly comply with rule 663a despite a lack of proof that the defendant debtor actually accepted service. We conclude that under these circumstances—where the record supports that the garnishor attempted service of the garnishment proceedings as properly authorized by rule 21a, yet the debtor avoided and refused service—the answer is yes.

---

[8] In *Hering*, the Austin court of appeals concluded that rule 663a unambiguously requires that "the debtor must be served"; therefore, the rule was not met where the garnishor conceded it had not served the debtor and the debtor only received notice from his bank. 735 S.W.2d at 639, 641–42.

[9] The *Walnut Equipment* court relied on *Hering* in holding that a debtor's voluntary appearance does not cure the garnishor's failure to serve it with a copy of the writ. 907 S.W.2d at 915.

[10] The Corpus Christi court of appeals in *Mendoza* followed *Walnut Equipment* in concluding that no writ could lie where the garnishor did not comply with rule 663a but the debtor voluntarily appeared. 962 S.W.2d at 651–52.

[11] Melissa does not dispute that Paul was not actually served.

Upon reviewing the plain, unambiguous language of rule 663a, we conclude that compliance with rule 663a does not necessarily require proof of actual acceptance of service by the debtor. *See* Tex. R. Civ. P. 663a; *Crowe v. Ware*, No. 05-96-01294-CV, 1998 WL 258398, at *2 (Tex. App.—Dallas May 22, 1998, no pet.) (not designated for publication) ("Rule 663a requires actual service on the debtor, [but] it does not require proof that the debtor accepted the service, merely that he was properly served under [r]ule 21a."). Rather, rule 663a requires that the defendant "shall be served in any manner prescribed for service of citation or as provided in [r]ule 21a." Tex. R. Civ. P. 663a; *see* Tex. R. Civ. P. 21a. In other words, a garnishor may comply with rule 663a by complying with rule 21a. *See* Tex. R. Civ. P. 663a; *Crowe*, 1998 WL 258398, at *2 (rule 663a requires that debtor be properly served under rule 21a).

Upon reviewing the plain, unambiguous language of rule 21a, we conclude compliance with rule 21a also does not necessarily require proof of actual acceptance of service. *See* Tex. R. Civ. P. 21a; *Gonzales*, 863 S.W.2d at 101 (discussing how procedural requirements under rule 21a are not "of such rigidity" to require proof of actual receipt of notice). Moreover, Texas courts consistently have held that a party who has fully complied with the notice requirements in rule 21a, yet fails to establish actual receipt of notice upon the opposing party, may show proper service through constructive notice. *E.g.*, *Dougherty-Williams*, 2014 WL 2809827, at *6; *Myers v. Cnty. of Williamson*, 2011 WL 6352288, at *4; *Waggoner v. Breland*, No. 01-10-00226-CV, 2011 WL 2732687, at *3 (Tex. App.—Houston [1st Dist.] July 14, 2011, no pet.) (mem. op.); *Mark Rotella Custom Homes*, 2008 WL 623785, at *3–4; *Etheredge*, 169 S.W.3d at 382 *Gonzales*, 863 S.W.2d at 102; *Roberts*, 133 S.W.3d at 663; *Approximately*

11

*$14,980.00*, 261 S.W.3d at 189.[12]

Here, the record[13] reflects that Morgan Stanley and IberiaBank were served with the writ on November 21, 2012, which was the Wednesday before Thanksgiving. Melissa's counsel received notification that the garnishees had been served on Monday, November 26, 2012. Starting on Tuesday, November 27, 2012, Melissa attempted service upon Paul in person at both Paul's residential address and the business address for Paul's law firm. The constable attempted service multiple times at Paul's residence and business, spoke both with Paul's brother and one of Paul's employees, and was repeatedly informed Paul was "not in." The citation was returned as "unserved." There is evidence that Paul may have had an alternate "temporary" business address with a different suite number from his "permanent" business address. The constable's returns reflect service attempts made at both suite numbers at issue, which were located in the same building. The constable expressly noted that Paul was "avoiding service" at a "good [work] address."

---

[12] We note that several of these constructive notice cases involved default judgments (*Dougherty-Williams*, *Myers*, and *Approximately $14,980.00*) or "default summary judgment" (*Gonzales*). Although constructive notice was not at issue, the Fort Worth court of appeals has treated a judgment in garnishment as analogous to a default judgment in the context of rules 663a and 21a. *Lease Finance Grp., LLC v. Childers*, 310 S.W.3d 120, 125–27 (Tex. App.—Fort Worth 2010, no pet.) (concluding garnishor that did not file certificate of service, officer's return, or affidavit showing service had burden to prove proper service under rule 21a and garnishor did not prove that it served debtor "as soon as practicable" under rule 663a).

[13] Melissa testified at the hearing. Also admitted were an affidavit from Melissa's counsel's paralegal and various exhibits, including the constable's returns. Paul does not raise any evidentiary challenge on appeal, either to the evidence presented as to constructive notice, or to Melissa's affidavit or any other evidence presented in support of her applications for the prejudgment writs of garnishment. Nor, aside from lack of jurisdiction over his property based on improper service or notice, and even though he expressly denied the findings in the writ in his motions, has Paul otherwise challenged on appeal the substantive grounds for the trial court's granting of the April 10, 2013 final summary judgments in favor of Melissa.

On November 27, 2012, Melissa also attempted service upon Paul by certified mail, return receipt requested. The certified mailing to Paul's residence came back marked "unclaimed,"[14] and the certified mailing to Paul's "permanent" business address came back marked "refused."[15] Record evidence also shows that the "permanent" suite number is reflected in Paul's business address on the fax transmittal cover sheet and cover of his appellate brief in *Jacobs I*, filed January 22, 2013; on the State Bar's website as his "work address" as of April 8, 2013; and on the fax transmittal cover sheet for his motions to vacate or dissolve also dated April 8, 2013.

Viewed in the light most favorable to the ruling, *see Worford*, 801 S.W.2d at 109, we conclude there is some record evidence of the method and manner of Melissa's service, and that Paul avoided service and refused delivery of certified mail to a valid business address to support constructive notice.[16] *See Mark Rotella Custom Homes*, 2008 WL 623785, at *3–4; *Roberts*, 133 S.W.3d at 663. Moreover, Paul has offered no explanation for why such refusal does not constitute constructive notice. *See Mark Rotella Custom Homes*, 2008 WL 623785, at *3–4. Therefore, the record evidence supports the trial court's implicit finding that Melissa met her burden to show proper service through constructive notice.

---

[14] "Notice sent by certified mail and returned 'unclaimed' does not provide the notice required by [r]ule 21a." *Approximately $14,980.00*, 261 S.W.3d at 189.

[15] Melissa filed a certificate of service in both garnishment cases stating that she mailed notice of the writ to Paul at both his residential and "permanent" business addresses on November 27, 2012 via both first-class and certified mail; that the certified mailing to Paul's residence came back marked "unclaimed"; that the certified mailing to Paul's business address came back marked "refused"; and that the first-class mailings to both addresses were not returned.

[16] Paul did not testify at the hearing. Paul's trial counsel testified to his belief that Paul may have accepted certified mail at his "permanent" business address "on other cases."

13

Paul also contends that "[f]ailure to properly serve the debtor deprives the trial court of jurisdiction over the debtor's property—the res." Again, we already have concluded that Melissa properly served Paul. Moreover, there is no dispute here that Melissa also properly served the garnishees such that the trial court could properly exercise custody and control over the funds held by the garnishees belonging to Paul. *Moody Nat'l Bank v. Riebschlager*, 946 S.W.2d 521, 523–24 (Tex. App.—Houston [14th Dist.] 1997, no writ) (op. on reh'g) ("Generally, when a writ of garnishment and summons are issued but not served upon the garnishee, his subsequent appearance and answer give the court no jurisdiction of the fund."); *see Ins. Co. of N. Am. v. Friedman*, 74 Tex. 56, 11 S.W. 1046, 1047–48 (1889) ("Before a judgment can be rendered against one sought to be made liable as garnishee, against his will, the court must have such custody or control over the thing on which the liability depends as will enable it to render a judgment which will bar any claim of the original defendant against the garnishee on account of the disposition made by him of the thing in pursuance of the judgment[.] Such control or custody cannot be given by any answer one sought to be charged as a garnishee may file, and can only exist when the steps made requisite by the statute have been taken to bring the garnishee before the court."); *Small Bus. Inv. Co. v. Champion Int'l Corp.*, 619 S.W.2d 28, 30 (Tex. App.—Houston [1st Dist.] 1981, no writ) (citing *Friedman*).

Further, beyond the evidence that both the debtor and the garnishees were properly served here, Paul does not dispute that he voluntarily appeared, and his trial counsel presented evidence and argument on his behalf at the hearing on Melissa's motions for final summary judgment and Paul's motions to vacate or dissolve.[17]

---

[17] To the extent that Paul relies upon cases where Texas courts have concluded that

Finally, to the extent that Paul appears to argue Melissa failed to serve him "as soon as practicable following the service of the writ," Tex. R. Civ. P. 663a, we disagree. Paul relies on *Lease Finance Group, LLC v. Childers*, 310 S.W.3d 120 (Tex. App.—Fort Worth 2010, no pet.). However, this case is distinguishable from *Lease Finance*, where the court concluded that a 15-day delay before serving the debtor did not satisfy the strict requirements of rule 663a. *See id.* at 126. Here, the garnishees were served on Wednesday, November 21, 2012. The rest of that business week consisted of court holidays. Melissa's counsel received notice that the garnishees had been served on Monday, November 26. The certified mailings went out one day later. There is some record evidence to support the trial court's implicit finding that Melissa complied with the "as soon as practicable" requirement in rule 663a. Under these circumstances, we conclude that the trial court did not abuse its discretion in denying Paul's motions to vacate or dissolve.

---

voluntary appearance by a debtor does not waive the right to service of the writ, none of those cases involved a situation where there otherwise was proper service under rule 21a by way of proof of constructive notice to the debtor to meet strict compliance with the garnishment statutes and rules. We therefore need not reach whether garnishment proceedings may be sustained on the basis of a debtor's voluntary appearance alone. *See* Tex. R. App. P. 47.1. Of course, we recognize that there is currently an unresolved split as to whether a debtor may waive its right to service by voluntarily appearing in a garnishment proceeding. *Compare Mendoza*, 962 S.W.2d at 651–52 (reversing writ where debtor filed general denial, and motions to set aside judgment, for new trial, and to dissolve writ); *Walnut Equip.*, 907 S.W.2d at 915 (affirming dissolution of writ despite debtor's filing motion to dissolve and appearing at hearing), *with DEL-PHI Eng'g Assocs., Inc. v. Tex. Commerce Bank-Conroe, N.A.*, 771 S.W.2d 589, 591 (Tex. App.—Beaumont 1989, no writ) (affirming agreed judgment between garnishor and garnishee and denial of debtor's motion to dissolve writ where debtor agreed to and voluntarily appeared; "we perceive the second hearing was properly held, by agreement; notice, in effect, was waived. The debtors had ample opportunity to present their defenses."). We point out, however, that there may be an important distinction between potential waiver of the debtor's right to service by the debtor itself that voluntarily appears versus any waiver of the debtor's right by the garnishee. *See Small Bus. Inv.*, 619 S.W.2d at 30 ("When a garnishee answers in a suit praying for a writ it waives its right to be served with a writ but it does not waive the rights of the debtor.").

We overrule Paul's undesignated issue.

### III.    CONCLUSION

Accordingly, we affirm the trial court's judgments.

/s/    Marc W. Brown
Justice

Panel consists of Justices Christopher, McCally, and Brown.

16