

# NUMBER 13-19-00510-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ASCHERE ENERGY, LLC,**            **Appellant,**

**v.**

**EAGLE LAKE GAS COMPANY, LLC**
**F/K/A COOLANGATTA JOINT VENTURE,**       **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Benavides

By four issues, appellant Aschere Energy, LLC (Aschere) challenges the trial

court's order on a writ of garnishment. Appellee Eagle Lake Gas Company, LLC f/k/a/

Coolangatta Joint Venture (Eagle Lake) filed the writ of garnishment against the

garnishee, Aurora Resources Corporation (Aurora), to satisfy a judgment against

Aschere. Aschere argues that: (1) the writ of garnishment should have been dissolved or modified since the garnishee was aware of third-party claims to the garnished funds; (2) it was entitled to an opportunity to contest Aurora's verified answer to determine if there were third-party claims to the garnished funds; (3) the recorded assignments Aschere filed were not fraudulent; and (4) Eagle Lake lacks standing and is estopped from making the claim the recorded assignments were fraudulent and Colorado County has exclusive jurisdiction to determine that matter. We affirm.

## I. BACKGROUND

Aschere identifies itself as "a company that buys and sells oil and gas leasehold working interests." In 2014, Aschere, along with Aurora and other entities, entered into an agreement to develop and explore mineral deposits in the Coolangatta Mineral Prospect in Colorado County, Texas. When the Coolangatta Mineral Prospect was developed, the original entities all agreed to operate under a joint operating agreement (JOA), part of which stated that an assignment that violated its uniformity clause would not be considered valid. Later, Eagle Lake acquired interest via an assignment from Aschere, and there was no issue with uniformity in that assignment.

Based on testimony presented in multiple hearings before the trial court, John Waltzing, the manager of Eagle Lake, explained that Eagle Lake had existed since about 2016. He stated that Aschere had been the prior manager of the Coolangatta Joint Venture but was replaced on November 7, 2016, because it was "stealing" proceeds of the oil well to pay its debt on a different oil well and had assigned itself the mineral rights to the Coolangatta oil well. Eagle Lake sued Aschere to recover its money and mineral

2

rights.

The parties were sent to arbitration, and the arbitration panel declared that Aschere's self-dealing assignment of Eagle Lake's interest in the Coolangatta Mineral Prospect was invalid. The panel awarded Eagle Lake $226,306.11 in its final award. Eagle Lake made two attempts to collect on the arbitration award. Eagle Lake had the trial court in Colorado County, Texas, where the Coolangatta Mineral Prospect is located, confirm the arbitration panel's award, attach Aschere's property, and then Eagle Lake foreclosed on the attachment lien. However, the evening before the sheriff's sale, Aschere filed several backdated property assignments to supposed third-party investors of the foreclosed property attempting to stop the sale. The sheriff's sale went forward and Eagle Lake credited Aschere $30,000 towards its judgment based on the sale.

Eagle Lake also filed this writ of garnishment in Nueces County in an attempt to recover a portion of the remaining $200,317.89 Aschere owed. The trial court signed the order for the writ of garnishment. Aurora, the garnishee, filed its verified answer, stating it was indebted to Aschere for $63,185.43 in cash and also on a monthly basis due to working interests in certain wells. Aurora stated in its verified answer that it knew "of no other claim on its indebtedness to the Defendant." Aschere filed a motion for dissolution of the garnishment, but the trial court denied Aschere's motion and ordered the garnished funds to be placed in the registry of the court on April 18, 2019.

On May 2, 2019, Aschere filed its motion for new trial alleging that it had newly obtained information that "a substantial portion of the funds claimed to belong to Aschere actually belong to third parties." Aschere requested a new trial in order to "controvert the

3

garnishee's answer" stating that the assignments to third party investors occurred in 2016 and Aurora had actual notice of the assignments. Eagle Lake argued that the documents were supposedly "dated" before the hearings, so it was not "newly obtained" information and that Aschere cannot represent independent third parties in a garnishment proceeding.

The trial court conducted a hearing on the motion for new trial, in which Eagle Lake argued that all the documents Aschere presented to the trial court were undated, unrecorded, and between Aschere and each of the third parties. Eagle Lake also stated that none of the documents attached any interests of the third parties to the garnishee. Aschere countered that the $63,000 did not belong to Eagle Lake, but to the third-party investors because the assignment under the participation agreement occurred in 2016. The trial court denied Aschere's motion for new trial.

Later, the trial court conducted a hearing on Eagle Lake's motion for attorney's fees. The trial court heard testimony from Brian Hines of Aurora, who explained the history of how the interested parties came to be involved in this case. Then Aschere's president, Alex Parvizian, testified about how it was removed from the Coolangatta Mineral Prospect and why it recorded a wellborne assignment the day after the removal. He also explained how the Coolangatta Mineral Prospect came to be and how the initial interests were acquired. Parvizian also stated that the third-party investors were bona fide purchasers that paid for their assignments, and it filed the assignments in 2019 after its lawyer cleared up a misunderstanding on Aschere's part regarding the assignment of rights.[1] Parvizian

---

[1] Parvizian explained Aschere thought it had to wait on Wandoo Energy LLC (Wandoo), one of the original investors in the Coolangatta Mineral Prospect, to assign it similar rights in the second oil well as it

4

said the 2019 filing of the assignments to the third-party investors just memorialized the 2016 agreement between them.

Waltzing testified at the hearing also. He explained why Aschere was removed as the manager of the Coolangatta Mineral Prospect and how Eagle Lake was penalized by the Internal Revenue Service due to Aschere withholding documents. Waltzing stated that after the arbitration closed, Aschere submitted documents that demonstrated Parvizian knew Aschere breached the JOA and Uniform Interest Agreement. Eagle Lake had requested the same documents during discovery, but Aschere never produced them. Waltzing explained that had Aschere produced those documents earlier, it would have saved Eagle Lake attorney's fees.

Following the hearing, the trial court issued its final judgment and order. In the judgment, it granted Eagle Lake's "Motion for Statutory and Exemplary Damages and Attorneys' fees under Chapter 12 of the Texas Civil Practice and Remedies Code." It also found that the "purported [third-party] assignments to real property in a mineral prospect or contract area recorded for property that had been foreclosed by a prior writ of attachment and final judgment" filed by Aschere were "fraudulent claims to real and personal property filed to financially injure [Eagle Lake]." The trial court found that Aschere was liable to Eagle Lake in an amount over $50,000 for fees and damages. This appeal followed.

## II.    GARNISHMENT

By two issues, Aschere alleges the writ of garnishment should have been dissolved

---

had in the first oil well. Aschere's lawyer advised the company that the rights were already earned under the Participation Agreement signed by the initial parties involved in the Coolangatta Mineral Project.

5

or modified. It states that (1) the garnishee was aware of third-party claims to the garnished funds and did not disclose that information in its verified answer and (2) it was entitled to contest the verified answer as to the existence of additional claims.

## A.  Standard of Review

We review a trial court's ruling on a motion to dissolve a writ of garnishment for an abuse of discretion. *Jacobs v. Jacobs*, 448 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Wease v. Bank of Amer.*, No. 05-14-00867-CV, 2015 WL 4051974, at *2 (Tex. App.—Dallas July 2, 2015, no pet.) (mem. op.). A "trial court abuses its discretion if, under the record, it reasonably could have reached only one conclusion and it failed to do so." *Moroch v. Collins*, 174 S.W.3d 849, 864 (Tex. App.—Dallas 2005, pet. denied). "However, because a trial court has no discretion in determining what the law is or applying the law to the facts, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* at 864–65.

## B.  Applicable Law

Garnishment is a statutory proceeding whereby the property, money, or credits of a debtor in the possession of another are applied to the payment of a debt. *Bank One, Tex., N.A. v. Sunbelt Savs., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992) (per curiam); *see Zeecon Wireless Internet, LLC v. Amer. Bank of Tex., N.A.*, 305 S.W.3d 813, 816 (Tex. App.—Austin 2010, no pet.); *Wease*, 2015 WL 4051974, at *2. A garnishee is a third party who owes a debt to, or holds property of, the debtor. *Bank One*, 824 S.W.2d at 558. The plaintiff or garnishor is a creditor of the debtor and requests the court to issue the writ of garnishment to the garnishee. *Tenet Health Sys. Hosps. Dall., Inc. v. N. Tex. Hosp.*

6

*Physicians Grp., P.A.*, 438 S.W.3d 190, 197 (Tex. App.—Dallas 2014, no pet.). The remedy of garnishment is purely a creature of statute and was unknown at common law. *Zeecon Wireless*, 305 S.W.3d at 816; *see Beggs v. Fite*, 106 S.W.2d 1039, 1042 (Tex. 1939).

Garnishment proceedings in Texas are governed by chapter 63 of the Texas Civil Practice and Remedies Code and rules 657 through 679 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 657–79; TEX. CIV. PRAC. & REM. CODE. ANN. §§ 63.001–.008. Texas Rule of Civil Procedure 658 provides that a plaintiff may file an application for writ of garnishment either at the beginning of the lawsuit or at any time during the lawsuit's progress. TEX. R. CIV. P. 658. The application must be supported by an affidavit and must meet all statutory requirements. *Id.* The prerequisites for the issuance of a writ of garnishment after judgment are set forth in the civil practice and remedies code, which provides that such a writ is available if "a plaintiff has a valid, subsisting judgment and makes an affidavit stating that, within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the judgment." TEX. CIV. PRAC. & REM. CODE. ANN. § 63.001(3). A garnishment is wrongful if the factual allegations in the affidavit prescribed by § 63.001 are false. *Jamison v. Nat'l Loan Invest., L.P.*, 4 S.W.3d 465, 468 (Tex. App.—Houston [1st Dist.] 1999, pet. denied.).

When a garnishee responds to a writ of garnishment by answering that it actually holds funds belonging to the debtor, the garnishee's answer "establishes prima facie proof that the debtor owns the funds, and without further evidence the garnishee may have those funds applied to pay the debt owed by the debtor." *Bechem v. Reliant Energy Retail*

7

*Servs., LLC,* 441 S.W.3d 839, 843 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "A debtor may controvert the garnishee's answer, however, or a third party may intervene claiming an interest in the garnished property." *Id.* at 843 (citing TEX. R. CIV. P. 664a, 673). When a dispute arises concerning title or ownership of the garnished property, the probative force of the garnishee's answer is destroyed, and the issue must be "tried as in other cases." *Id.*; *see* TEX. R. CIV. P. 674.

Rule 664a of the Texas Rules of Civil Procedure provides the framework for the dissolution or modification of a writ of garnishment. Rule 664a states that "any intervening party who claims an interest" in a garnished account may, by sworn written motion, seek to dissolve the writ of garnishment and the order directing its issuance "for any grounds or cause, extrinsic or intrinsic." TEX. R. CIV. P. 664a.

## C.    Discussion

Here, Eagle Lake alleged the two facts necessary to obtain a post-judgment writ of garnishment regarding property held by Aurora: (1) it had a valid, subsisting judgment against Aschere and, (2) within Eagle Lake's knowledge, Aschere did not possess property in Texas subject to execution and sufficient to satisfy the judgment. Aschere did not dispute the allegations in the application for the writ of garnishment. Therefore, Eagle Lake met all requirements for the issuance of the writ. *See Jamison*, 4 S.W.3d at 468.

Aschere responded instead with a motion for dissolution of writ of garnishment. In its motion, Aschere argued that (1) Eagle Lake was not a judgment creditor in the judgment underlying the writ of garnishment,[2] (2) the underlying judgment had been

---

[2] This issue had been determined by the arbitration panel. The Coolangatta Joint Venture became known as Eagle Lake, and it had previously been determined that the parties were one and the same for

8

satisfied, and (3) alternatively, it requested an accounting of the proceeds from Aurora in order to determine if "other investors in the Coolangatta Prospect may be affected by this writ of garnishment."[3]

Following a hearing, the trial court granted the writ of garnishment and denied Aschere's motion to dissolve the writ of garnishment. The trial court found there was a valid, subsisting judgment against Aschere and concurred with the arbitration panel that Eagle Lake "merged with Coolangatta Joint Venture . . . and [it] may pursue those claims." It also did not allow Aschere to take testimony from Aurora when the parties all learned a representative from Aurora was present in the courtroom.[4]

In its motion for new trial, Aschere alleged that "due to newly obtained information from third parties," there was evidence to controvert Aurora's verified answer. Aschere claimed to have information that Steven Smith and John Carpenter were bona fide purchasers and had a third-party claim to ownership that Aurora was aware of.[5] However, Smith and Carpenter never intervened in the lawsuit making a claim to any ownership rights.[6] Aschere attached exhibits that were titled "Wellbore Assignments" and "Partial

purposes of this case.

[3] Alex Parvizian's affidavit stated that "third parties now hold rights and interests in Aschere's former undivided interest in the prospect area of which the Property is a part."

[4] A representative from Aurora was present in the courtroom during the writ of garnishment hearing. Aschere asked permission to take testimony from him but the trial court denied that request based on its discretion and stated that the information in front of it was enough to make a determination regarding the writ of garnishment.

[5] E-mail correspondence attached as exhibits to Aschere's motion for new trial between Aschere's counsel and representative from Aurora state that there was no history of Steven Smith or John Carpenter in Aurora's "paydeck–currently or in the past."

[6] Smith and Carpenter both sent the trial court ex parte communication regarding their alleged third-party assignments by Aschere. Aschere was admonished to notify them not to communicate with the

9

Assignment of Oil and Gas Leases" to its motion, which it alleged transferred interest to third-party investors. However, those assignments were not dated and showed a notary date of February 4, 2019.[7] After hearing arguments from the parties, the trial court said it would review "everything" and would either rule on the motion for new trial or let it expire as a matter of law. *See* TEX. R. CIV. P. 329b(c). There is no order regarding the motion for new trial in our records.

Texas Rule of Civil Procedure 673 allows for either a plaintiff or defendant to file a "traverse" to contravene a garnishee's answer. *Aycock v. EECU*, 510 S.W.3d 636, 639 (Tex. App.—El Paso 2016, no pet.) (referencing TEX. R. CIV. P. 673). Rule 673 states that a defendant may controvert a garnishee's answer by filing an "affidavit stating that he has good reason to believe, and does believe, that the answer of the garnishee is incorrect, stating in what particular he believes the same to be incorrect." TEX. R. CIV. P. 673. In *Aycock*, the party contesting the garnishee's motion filed a summary judgment motion, which put the issue of the garnishee's motion to be "tried as in other cases." *Aycock*, 510 S.W.3d at 639.

Here, other than a reference in Parvizian's affidavit that there may be other third-party investors subject to the property held by Aurora, there was not specific information from either Aschere or any third-party investor filed to challenge Aurora's verified answer. In its motion for new trial, Aschere attached e-mails from Smith to Wandoo Energy LLC

---

trial court in that manner. Neither party filed any official documents intervening in the case following their communications to the trial court.

[7] The judgments from Colorado County, Texas that the writ of garnishment was based on were dated October 15, 2018.

10

(Wandoo)[8] to support Aschere's claim that Aurora knew of potential third-party claims. However, "[f]or exhibits to be considered at trial, they must be properly admitted as evidence, even if already attached to pleadings under rule 59 [of the Texas Rules of Civil Procedure]." *Nat'l Med. Fin. Servs., Inc. v. Irving Indep. Sch. Dist.*, 150 S.W.3d 901, 905 (Tex. App.—Dallas 2004, no pet.); *Howell Petroleum Corp. v. Kramer*, 647 S.W.3d 723, 725 (Tex. App.—Corpus Christi–Edinburg 1983, no pet.); *see* TEX. R. CIV. P. 59 (regarding exhibits and pleadings). Neither Smith, Carpenter, nor a representative from Aschere testified regarding those e-mails or asked the pleading exhibits be admitted into evidence.

Additionally, a party seeking a new trial on grounds of newly discovered evidence must demonstrate to the trial court that (1) the evidence came to his knowledge since the trial, (2) his failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *see also Guardianship of Thomson*, No. 13-20-00378-CV, 2021 WL 266112, at *1 (Tex. App.—Corpus Christi–Edinburg Jan. 21, 2021, no pet. h.) (mem. op.). Aschere's argument here fails. Through its own testimony and evidence, Aschere knew about these alleged third-party investors years before the hearing on the writ of garnishment. Aschere alleged the transfers took place in 2016, so it could not state that it just became aware of the third-party investors when it was the party who supposedly transferred the interests to them in the first place.

---

[8] Wandoo held the original property rights that were transferred to the Coolangatta Mineral Prospect and was one of the initial members of the Prospect.

Therefore, the trial court did not abuse its discretion by denying the dissolution of the writ of garnishment. *See Jacobs*, 448 S.W.3d at 631. We overrule Aschere's first and second issues.

### III. FRAUDULENT DOCUMENTS

By its third issue, Aschere argues that the recorded assignments were not fraudulent and not intended to cause financial injury to Eagle Lake.

### A. Standard of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding. *Graham Central Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). We will sustain a legal sufficiency challenge if "the evidence offered to prove a vital fact is no more than a scintilla." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). In conducting our review, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

### B. Applicable Law and Discussion

In its final judgment and order, the trial court found that two exhibits filed by Aschere in its motion for new trial were "fraudulent claims to real and personal property

filed to financially injure [Eagle Lake]." The trial court goes on to say that

> The Exhibits are purported assignments to real property in a mineral prospect or contract area recorded for property that had been foreclosed by a prior writ of attachment and final judgment. Aschere admitted that it was present when the writ and final judgment foreclosing the property were issued and therefore knew the property was foreclosed when it recorded the purported assignments for the foreclosed property. Although these facts render the assignments fraudulent under Chapter 12 by themselves, the proscribed assignments were additionally fraudulent for other reasons.

The trial court also found that Aschere agreed to the covenant of uniformity contained in the Participation Agreement and knew the assignments to the third-party investors violated that agreement and were "fraudulent." It detailed the history between the two parties and how Aschere's actions "intended to harm [Eagle Lake] by preventing [Eagle Lake] from ever recovering its judgment." The trial court also found that Aschere's defenses lacked merit and explained its reasoning in making its determination. And because there was evidence that Aschere's conduct was willful and deliberate, the trial court awarded exemplary damages against Aschere to "curb any future misdeeds of Aschere, and as recompense for Aschere's conduct here, in Nueces County." The trial court fined Aschere $10,000 for the filing of each of two exhibits, $11,165.00 in attorney's fees, and $20,000 in exemplary damages under Texas Civil Practice and Remedies Code § 12.002(b). *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 12.002(b)(1-4).

To prevail on appeal, Aschere must show there was no evidence to support the trial court's findings. *See Graham Central Station*, 442 S.W.3d at 263. The evidence presented at the hearing on attorney's fees and sanctions supported the trial court's rulings. The trial court heard from witnesses from Aurora, Aschere, and Eagle Lake who knew the history between the parties and what events had taken place giving rise to the

13

action in Nueces County. The evidence presented by Eagle Lake showed that Aschere had filed these alleged assignments with the Colorado County court the evening before the sheriff's sale was to take place, knowing that Eagle Lake had obtained a judgment against it. The evidence also showed the assignments had no date as to when they were created and were notarized in 2019, years after the supposed assignment occurred. In addition, the assignments were not produced to the Nueces County trial court until Aschere's motion for new trial was filed. There was more than a scintilla of evidence to support the trial court's finding that the assignments were fraudulent and used in a manner intended to cause harm to Eagle Lake. *See Merrell Dow*, 953 S.W.2d at 711. A reasonable jury could have reached the same conclusion as the trial court based on the evidence provided. *See City of Keller*, 168 S.W.3d at 827. We overrule Aschere's third issue.

## IV.     ENFORCEMENT OF UNIFORMITY CLAUSE

By its fourth issue, Aschere attempts to argue that Eagle Lake added claims to the order that are currently being litigated in Colorado County. However, the issues Aschere argues about were not related to the garnishment case.

"In instances where inherently interrelated suits are pending in two counties, and venue is proper in either county, the court in which suit was first filed acquires dominant jurisdiction." *In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322 (Tex. 2016) (orig. proceeding) (per curiam); *see In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding); *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988), *overruled on other*

14

*grounds, In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287. We conduct our dominant jurisdiction analysis under the deferential abuse of discretion standard. *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d at 293; *see also In re PlainsCapital Bank*, No. 13-17-00021-CV, 2018 WL 2979836, at *6 (Tex. App.—Corpus Christi–Edinburg June 8, 2018, no pet.) (mem. op.).

In order to raise exclusive jurisdiction, Aschere must show the lawsuits are "inherently interrelated." *In re Red Dot*, 504 S.W.3d at 322. Although the underlying facts are the same in this suit and the suit in Colorado County, that is where any relation ends. The suit in Nueces County was about garnishment to fulfill a final judgment. Whatever lawsuit continues in Colorado County, it is unrelated to this garnishment proceeding. Therefore, the Colorado County lawsuit would not acquire any type of dominant jurisdiction over the garnishment lawsuit in Nueces County.

In its brief, Aschere cites to the motion for attorney's fees hearing as to where in the record this argument over dominant jurisdiction occurred, but we find no reference in the record to an issue regarding Eagle Lake's standing in front of the Nueces County court where cited. Additionally, the issue which Aschere now raises was not an issue that was before the trial court in Nueces County; it regards issues determined in previous lawsuits in another county. Here, the trial court was to determine if it had a final judgment in order to issue the writ of garnishment and found that the exhibits Aschere filed to it were fraudulent. The trial court's ruling did not have any implication regarding documents filed in another lawsuit in the Colorado County trial court. *See In re Red Dot*, 504 S.W.3d at 322. Therefore, we find that the Nueces County trial court had proper jurisdiction in

15

relation to the writ of garnishment case. We overrule Aschere's fourth issue.

## V.  CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
13th day of May, 2021.

16