**AFFIRM; and Opinion Filed July 31, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01519-CV

**BEVER PROPERTIES, LLC AND JESSE M. TAYLOR, D.D.S., P.A., Appellants**
**V.**
**JERRY HUFFMAN CUSTOM BUILDER, L.L.C., A/K/A JERRY HUFFMAN CUSTOM BUILDERS, L.L.C.; PLANO PARKWAY OFFICE CONDOMINIUMS, A/K/A PLANO PARKWAY OWNERS ASSOCIATION; AND DR. JOJO CHEUNG, D.D.S., D/B/A ESTHETIC IMAGE DENTISTRY., Appellees**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-2512-04**

## MEMORANDUM OPINION

Before Justices Fillmore, Myers, and Evans
Opinion by Justice Fillmore

Bever Properties, LLC (Bever Properties), the owner of an office condominium unit, and

Jesse M. Taylor, D.D.S., P.A. (Taylor, P.A.), the lessee of that unit, sued the developer of the

office condominium project, Jerry Huffman Custom Builder, L.L.C., a/k/a Jerry Huffman

Custom Builders, L.L.C. (JHCB); the office condominium association, Plano Parkway Office

Condominiums, a/k/a Plano Parkway Owners Association (PPOC); and the owners of the other

two condominium units in the building, Dr. Mary Ellen Kirwan, d/b/a Kirwan Chiropractic

(Kirwan),[1] and Dr. JoJo Cheung, D.D.S., d/b/a Esthetic Image Dentistry (Cheung). After a nine-

day trial, the jury answered the majority of the questions in the charge in favor of Bever

---

[1] Appellants' nonsuited their claims against Kirwan prior to trial, and Kirwan is not a party to this appeal.

Properties and Taylor, P.A. and awarded damages. The trial court granted JHCB's motion for judgment notwithstanding the verdict (JNOV) and Cheung and the PPOC's amended motion for JNOV and rendered judgment that Bever Properties and Taylor, P.A. take nothing on their claims.

In their first two issues, appellants assert (1) the trial court erred by granting JNOV on the jury's findings that JHCB committed common law and statutory fraud because the law of the case doctrine precludes the trial court's determination that the disclaimer-of-reliance clause in the sales agreement for the purchase of the condominium unit barred appellants from claiming they relied on JHCB's misrepresentations and omissions as a matter of law, and (2) because the jury's finding JHCB committed common law fraud should be reinstated, its findings that Cheung and the PPOC engaged in a conspiracy to commit common law fraud should also be reinstated. In their third issue, appellants contend (1) the trial court erred by granting JNOV on the jury's finding that Cheung breached a fiduciary duty to Taylor P.A. because, pursuant to the Texas Uniform Condominium Act (TUCA),[2] Cheung owed a derivative fiduciary duty to Taylor, P.A. through Bever Properties and Taylor, P.A. was adversely affected by Cheung's breach of that duty, and (2) even if the jury charge was technically incorrect, any error was harmless and judgment should be rendered based on the jury's finding that Cheung breached a fiduciary duty to Taylor, P.A. In their final two issues, appellants argue the trial court erred by granting JNOV on the jury's award of punitive damages against Cheung and the PPOC and of attorney's fees on appellants' statutory fraud claim against JHCB. We affirm the trial court's judgment.

---

[2] *See* TEX. PROP. CODE ANN. §§ 82.001—.164 (West 2014).

**Background**[3]

By 2002, Dr. Jesse M. Taylor, III (Jesse) and his wife, Cathy Taylor (Cathy),[4] had been searching for a number of years for a piece of property suitable for relocation of Taylor, P.A., Jesse's dental practice. One of the necessary attributes of the new location was space for prominent signage to facilitate development of Taylor, P.A.'s brand, Hollywood Smiles. Jesse and Cathy wanted a stand-alone illuminated sign that would display the time and temperature, as well as various messages, in order to attract the attention of individuals passing the property.

JHCB built medical and dental offices, with the majority of its developments consisting of office condominiums.[5] JHCB entered into a contract to purchase real property at 4708 Plano Parkway with the intent of developing the property into an office building containing three units. Jerry Huffman (Huffman), the president and owner of JHCB, testified that JHCB generally did not consummate the purchase of a piece of property it intended to develop until a significant number of the planned units were pre-sold. At the 4708 Plano Parkway property, Kirwan agreed to purchase one of the units, Cheung agreed to purchase the second, and, on November 1, 2002, Jesse signed a letter of intent to purchase the third. Addendum A to the letter of intent signed by Jesse is titled "Office Condominium" and sets out a preliminary specification sheet.

On March 4, 2003, Jesse signed a sales agreement for the unit. Both Jesse and Cathy testified that, during the period between the signing of the letter of intent and the signing of the sales agreement, Huffman told them that there would not be a condominium regime for the

---

[3] We recite only those facts necessary to provide context to appellants' complaints on appeal.

[4] Because Dr. Taylor and his wife share the same surname, we refer to them by their first names in this opinion.

[5] Under the TUCA, "condominium" means "a form of real property with portions of the real property designated for separate ownership or occupancy, and the remainder of the real property designated for common ownership or occupancy solely by the owners of those portions." TEX. PROP. CODE ANN. § 82.003(a)(8).

property and they could have any sign they wanted so long as it was approved by the City of

Plano.[6]  However, paragraph five of Addendum "B" to the sales agreement stated:

> **Formation of Condominium Regime.**    Seller and Purchaser expressly acknowledge and agree that the Purchaser's obligations under this Contract are expressly subject to and conditioned upon Purchaser's review and approval of all documentation related to the creation of a condominium regime on the Property at the Closing.  During the Review Period, Seller shall undertake at its expense to prepare and deliver to the Purchase [sic] appropriate condominium documentation for creating a condominium regime on the Property.  Seller and Purchaser shall in good faith endeavor to negotiate the final terms and conditions of the condominium documentation during the Review Period.  In the event Seller and Purchaser are unable to fully agree to the terms and conditions of the condominium documentation on or before the expiration of the Review Period, [e]ither party may terminate this Contract.  Upon termination of the Contract, neither party shall have any further right or obligations hereunder, and the Purchaser shall be entitled to an immediate return of the Earnest Money less cost incurred by Seller deposited with the Seller.

The sales agreement also provided:

> **13.  SELLER'S REPRESENTATIONS.**  Seller shall not be bound by any statement or representation unless set forth in the Agreement or in an Addendum hereto or in any exhibit hereto ("Seller's Representations.").  Buyer acknowledges that Buyer has executed this Agreement solely on the basis of Seller's Representations (as defined in the previous sentence) and not in reliance on any other statement or representations attributed to Seller.

> **14.  OTHER PROVISIONS.**  Except as this Agreement otherwise provides, this Agreement constitutes the entire agreement between the parties and may not be modified except by written instrument signed by both parties. . . .

JHCB purchased the property at 4708 Plano Parkway on April 9, 2003, and began

constructing the building.  On September 24, 2003, JHCB filed with the Collin County Clerk a

condominium declaration for the PPOC (the Declaration).[7]  The members of the Board of the

---

[6] In their brief on appeal, appellants contend that Huffman represented to them that any condominium regime that was created would not prohibit them from having their desired sign.  However, at trial, both Jesse and Cathy testified Huffman told them there would not be a condominium regime on the property.

[7] Under the TUCA, "declaration" means "an instrument, however denominated, that creates a condominium, and any amendment to that instrument."  TEX. PROP. CODE ANN. § 82.003(a)(11).  The declaration for the condominium unit must contain any restrictions on use, occupancy, or alienation of the units.  *Id.* § 82.055(9).

–4–

PPOC were Huffman and his sisters, Stephanie Rippe and Jennifer Golden. The Declaration incorrectly described the condominium as consisting of two buildings with seven owners.

Kirwan completed the purchase of her condominium unit in October 2003, and Cheung completed the purchase of his condominium unit in January 2004. After Cheung purchased his unit, there was a meeting between the Taylors, Cheung, and Kirwan regarding signage for the property. Neither Cheung nor Kirwan agreed with the Taylors' proposed illuminated sign. On March 2, 2004, Cathy communicated to Huffman via facsimile that (1) signage had always been the most important part of this transaction, (2) there had been no discussion "as to what would be the most advantageous and best used (advertising) for our business," and (3) there should be a meeting of the actual owners to approve and discuss options.

Jesse assigned his right to purchase the condominium unit to Bever Properties,[8] and a closing was scheduled for March 29, 2004. At some point before the scheduled closing, Rippe informed the Taylors the closing would be delayed due to a necessary inspection. On March 29, 2004, Rippe called a meeting of the Board of the PPOC for April 1, 2004. On March 30, 2004, Ann Taylor, a paralegal working for JHCB, faxed to Cathy information on signage criteria guidelines for another property developed by JHCB and informed Cathy those rules applied to all of JHCB's properties. She also informed Cathy that the owners association made decisions about signage on the property and "as with any association, the majority rules."

Rippe, Cheung, and Kirwan attended the meeting of the Board of the PPOC on April 1, 2004. Cheung was elected president of the PPOC, while Kirwan was elected treasurer and Rippe was elected secretary. The Board voted that, upon the closing of the last condominium unit, the

---

[8] At the time of the closing, Jesse and Cathy each owed fifty percent of Bever Properties. Jesse later transferred his interest to Cathy, making her the sole owner of Bever Properties.

new owner would take the position of secretary. The Board also voted in favor of a monument sign on the property that would contain spaces for all three units.

Bever Properties was scheduled to close on its condominium unit on April 14, 2004. The Taylors attended the scheduled closing and, while reviewing the closing documents, found the Declaration. Section 2.9 of the Declaration was titled "Use and Occupancy Restrictions." Section 2.9(E)(4) provided that, except for certain rights retained by JHCB, "no sign of any kind shall be displayed to the public view on or from any Unit or Common Elements without the prior written consent of the Board or the written consent of the Managing Agent acting in accord with the Board's direction."[9] Section 4.4 of the Declaration was titled "Specific Power to Restrict Use and Enjoyment." Section 4.4(I) provided the owners' association had the right "to control the visual attractiveness of the Property, including, without limitation, the right to require Owners to eliminate objects which are visible from the Common Area and which, in the Association's judgment, detract from the visual attractiveness of the Property."

When neither the closing agent nor the Taylors could reach Huffman, the Taylors left without completing the purchase of the condominium unit. Cathy spoke to both a friend and Huffman that evening about the closing documents. According to Cathy, Huffman told her he had not filed a condominium declaration for the property and the declaration she described to him did not correctly describe the property. Huffman reiterated there was not a condominium regime for the property and the Taylors could have any sign on the property that was approved by the City of Plano. Bever Properties completed the purchase of the condominium unit on April 15, 2004, and leased the suite to Taylor, P.A. Both the Deed of Trust signed by the Taylors and the Commercial Lease signed by Jesse recognize the unit is subject to a condominium regime.

---

[9] Under the TUCA, "common elements" means "all portions of a condominium other than the units and includes both general and limited common elements." TEX. PROP. CODE ANN. § 82.003(a)(5).

–6–

Further, the Special Warranty Deed delivered by JHCB to Bever Properties states the interest conveyed is subject to a condominium regime. On August 2, 2004, JHCB filed Articles of Incorporation for the PPOC, listing Huffman, Rippe, and Golden as members.

After Bever Properties purchased the condominium unit, the Taylors learned the Board of the PPOC had placed restrictions on the type of sign that could be placed on the property. The restrictions prevented Taylor, P.A. from having the stand-alone illuminated sign it desired. Further, the City of Plano allowed a maximum of two signs on the property. JHCB had purchased the property from an adjacent hotel, and a sign for the hotel remained on the property. Due to the monument sign approved by the Board of the PPOC on April 1, 2004, and the hotel sign, the City of Plano would not approve the Taylors' request for a stand-alone sign. After the Taylors removed the hotel sign, the PPOC, Cheung, and Kirwan supported the hotel's request to the City of Plano to replace the sign and opposed the Taylors' request to the City of Plano to approve their stand-alone illuminated sign. The City of Plano approved the Taylors' requested sign.

Appellants filed suit against JHCB, the PPOC, Kirwan, and Cheung seeking, among other things, a declaration the PPOC was not cognizable as a condominium association under Texas law and could not assert property management authority over Bever Properties. The trial court granted summary judgment in favor of Bever Properties and Taylor, P.A. on their request for declaratory relief and severed the summary judgment from Bever Properties' and Taylor, P.A.'s remaining claims. In the Fall of 2004, Taylor, P.A. installed a stand-alone illuminated sign on the property. The PPOC appealed the trial court's judgment, and we concluded there was a valid condominium regime on the property and the fact the Articles of Incorporation for the PPOC were not issued before the units were conveyed did not excuse Bever Properties from the regime. *See Plano Parkway Office Condos. v. Bever Properties, LLC*, 246 S.W.3d 188, 195 (Tex. App.—

Dallas 2007, pet. denied) (op. on reh'g) (*Bever Properties I*). We reversed the trial court's summary judgment and remanded the case for further proceedings. *Id.* at 196–97. After our mandate issued, Taylor, P.A. was required to remove its stand-alone illuminated sign because it did not comply with the signage restrictions approved by the Board of the PPOC.

Appellants continued to litigate their remaining claims against appellees. Appellants specifically asserted claims for breach of warranty of title against JHCB, and claims for fraud, statutory fraud, negligent misrepresentation, civil conspiracy, conspiracy to defraud, violations of the Texas Deceptive Trade Practices Act (the DTPA), and conspiracy to violate the DTPA against JHCB, the PPOC, Cheung, and Kirwan. The trial court granted summary judgment in favor of the defendants, and appellants appealed. As discussed in more detail below, we affirmed in part, reversed in part, and remanded the case to the trial court. *See Bever Properties, L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 897 (Tex. App.—Dallas 2011, no pet.) (*Bever Properties II*).

Following remand, the trial court granted summary judgment in favor of Bever Properties on its claim that JHCB breached its warranty of title, but left the issue of damages for determination by the jury. Following a nine-day jury trial, the trial court granted a directed verdict on appellants' claims under the DTPA. The jury (1) awarded Bever Properties $150,000 from JHCB on the breach of warranty of title claim; (2) found that JHCB committed common law fraud against both Bever Properties and Taylor, P.A., and Cheung and the PPOC were part of a conspiracy to commit that fraud; (3) awarded Bever Properties and Taylor, P.A. $37,500 each on their common law fraud claims; (4) found that JHCB committed statutory fraud against both Bever Properties and Taylor, but Cheung and the PPOC were not involved in a conspiracy to commit statutory fraud; (5) awarded Bever Properties $73,500 and Taylor, P.A. $228,000 due to the statutory fraud; (6) found JHCB made a negligent misrepresentation on which appellants

–8–

justifiably relied; (7) awarded Taylor, P.A. $895,500 on the negligent misrepresentation claim, but found Bever Properties had suffered no damages; (8) found Cheung failed to comply with his fiduciary duty to appellants; and (9) awarded Taylor, P.A. $335,180 for the breach of fiduciary duty, but found Bever Properties suffered no damages from the breach. The jury assessed punitive damages of $50,000 against Cheung and $100,000 against the PPOC but, because the verdict was not unanimous as to JHCB, did not answer the punitive damages question as to JHCB. Finally the jury awarded attorney's fees to appellants on the breach of warranty of title and statutory fraud claims.

JHCB filed a motion for JNOV on appellants' claims for fraud, statutory fraud, and negligent misrepresentation on grounds (1) there could be no justifiable reliance on the claimed misrepresentations as a matter of law; (2) the sales agreement contained both "reliance disclaimer/waiver and merger clauses"; and (3) there was no evidence to support the awarded damages. JHCB also requested JNOV on appellants' negligent misrepresentation claim based on the economic loss rule and on the breach of warranty of title claim because there was no evidence to support the awarded damages. In their amended motion for JNOV, Cheung and the PPOC asserted (1) appellants' fraud claims failed because the sales agreement expressly disclaimed any reliance on oral statements, stated that any modification to the sales agreement was required to be in writing, disclosed the property was subject to a condominium regime, and reliance was not justified as a matter of law; (2) there was no evidence of reliance by Taylor, P.A.; (3) there was no evidence to support the amount of common law fraud damages found by the jury; and (4) there was no evidence Cheung owed a fiduciary duty to Taylor, P.A., Cheung breached that duty, or to support the damages awarded for the alleged breach.

Appellants responded that the evidence supported the jury's finding that JHCB made misrepresentations about the existence of a condominium regime and that their ability to have the

sign they desired on the property was limited only by what the City of Plano would approve. They also asserted the "Court of Appeals dealt with this issue in this case when it was remanded back to this Court for a trial on the merits." Appellants contended they argued in their brief in *Bever Properties II* that appellees had the burden to prove reliance upon the sales agreement and "any supposed" merger clause. Appellants asserted appellees failed to carry that burden at trial.

The trial court granted JNOV in favor of JHCB, Cheung, and the PPOC and issued a memorandum opinion stating the bases for its ruling. As to the fraud and statutory fraud claims, the trial court determined:

> Where a party signs a contract and expressly disclaims reliance on any oral promises or representations by another party, the disclaimer of reliance is valid and binding. Based upon the documents executed by Plaintiff Bever in purchasing the condo unit from Defendant [JHCB], Plaintiff Bever acknowledged in writing that it was aware the condo unit was subject to the rules and regulations of the condominium regime and that it was not relying upon any oral statements allegedly made by the seller, Defendant [JHCB]. Therefore, as a matter of law, Plaintiff Bever is barred from claiming (1) that it did not know the condo unit would be subject to the rules and regulations of the condominium regime; and (2) that it relied upon alleged oral statements by Defendant [JHCB] promising that it could have the sign it desired in the location it desired.

(citations omitted). The trial court also determined that because "there could be no reliance by Plaintiff Bever on the alleged oral statements by Defendant [JHCB], and therefore no fraud, there could be no conspiracy to commit fraud." As to the breach of fiduciary duty claim, the trial court determined Cheung did not owe a fiduciary duty to Taylor, P.A. because it was not a unit owner under the TUCA.[10] Finally, the trial court determined that, because appellants were not entitled to recover actual damages, they were not entitled to recover either punitive damages or attorneys' fees. The trial court rendered judgment that appellants take nothing on their claims against JHCB, Cheung, and the PPOC.

---

[10] The trial court also stated the bases for granting JNOV on the breach of warranty of title and negligent misrepresentation claims. Appellants have not appealed the granting of JNOV on these claims.

**Standard of Review**

In five issues, appellants argue the trial court erred by granting JNOV in favor of appellees. We review a trial court's decision to grant JNOV under a no-evidence standard, examining whether any evidence supports the jury's findings. *Gharda USA, Inc. v. Control Solutions, Inc.*, No. 12-0987, 2015 WL 2148058, at *5 (Tex. May 8, 2015); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (test for legal sufficiency is same for summary judgment, directed verdict, JNOV, and appellate no-evidence review). No evidence exists when there is:

> (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of a vital fact.

*Gharda USA, Inc.*, 2015 WL 2148058, at *5 (quoting *City of Keller*, 168 S.W.3d at 810). We review only the evidence tending to support the jury's verdict and "must disregard all evidence to the contrary." *Id.* (quoting *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990)). We consider the evidence and possible inferences in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.*; *City of Keller*, 168 S.W.3d at 822. We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Gharda USA, Inc.*, 2015 WL 2148058, at *5; *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). "More than a scintilla of evidence exists when the evidence supporting the finding 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Gharda USA, Inc.*, 2015 WL 2148058, at *5 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

**Fraud and Statutory Fraud**

In their first two issues, appellants argue the trial court erred by granting JNOV on appellants' fraud and statutory fraud claims against JHCB and conspiracy to commit fraud

–11–

claims against Cheung and the PPOC. Appellants specifically assert this Court implicitly determined in *Bever Properties II* that the disclaimer-of-reliance clause in the sales agreement did not preclude appellants' common law and statutory fraud claims and, pursuant to the law of the case doctrine, this determination was binding on remand of the case to the trial court; the evidence supports the jury's finding that appellants relied on JHCB's misrepresentations and omissions; and because the jury's finding of common law fraud against JHCB should be reinstated, its corresponding findings that Cheung and the PPOC engaged in a conspiracy to commit common law fraud should also be reinstated.

*Law of the Case*

After this case was remanded following *Bever Properties I*, Cheung and the PPOC filed traditional and no-evidence motions for summary judgment. JHCB subsequently joined the motions without raising additional grounds for summary judgment. As relevant to this appeal, appellees requested a no-evidence motion for summary judgment on grounds there was no evidence: (1) they made representations to induce appellants to purchase their condominium unit; (2) any appellee "other than [JHCB]" made representations to appellants concerning the sale of the real estate, signage, or any other matter; (3) to suggest appellees made any written agreements to modify a sales agreement to include Cheung and the PPOC as representatives of JHCB or to authorize Cheung or the PPOC to make representations on behalf of JHCB; (4) they made representations that placement of signage in the Common Elements was not regulated by the Declaration and condominium Bylaws; (5) they took any action to prevent appellants from placing signage on the property; or (6) appellants had written permission, as required in the Declarations, to place a sign on the property. We concluded the no-evidence motion for summary judgment failed to meet the specificity requirements of rule of civil procedure 166a(i)

and, therefore, the trial court erred to the extent it granted the no-evidence motion for summary judgment. *Bever Properties II*, 355 S.W.3d at 888.

Appellees also moved for traditional summary judgment on appellants' claims for civil conspiracy, violations of the DTPA, fraud, conspiracy to defraud, and negligent misrepresentation against all appellees; breach of fiduciary duty against Cheung; and conspiracy to violate the DTPA and to commit statutory fraud against Cheung and the PPOC. We concluded that only two paragraphs of the motion for traditional summary judgment, both numbered "20," were relevant to the issues before us on appeal. *Id.* at 889–90. Because the arguments in those paragraphs were "cursory," we attempted "to determine as to each of appellants' claims whether grounds for traditional summary judgment were 'expressly presented' in" the two paragraphs and whether appellees met their summary judgment burden on any of those grounds. *Id.* at 890–91. As to appellants' claims for fraud and negligent misrepresentation, we determined that, in the second paragraph "20" of the motion for summary judgment, appellees had stated that "[appellants] contend [appellees] have engaged in fraud . . . [and] negligent misrepresentation . . . by making representations [appellants] were promised a sign by [appellees]." *Id.* at 891. We then addressed whether summary judgment had been properly granted based on the existence of a misrepresentation by any defendant. *Id.* at 891–92.

We concluded appellants waived through inadequate briefing the issue of whether there was a misrepresentation by Cheung or the PPOC because appellants' brief on appeal contained no argument regarding any such misrepresentation. *Id.* at 892. As to JHCB, we noted appellants had provided summary judgment evidence that Huffman and other representatives of JHCB told Cathy and Jesse that the property would not be "restricted by the same association guidelines" as other JHCB properties, and the sign appellants decided to install would be limited only by applicable regulations of the City of Plano. *Id.* Because there was a material issue of fact about

the existence of a misrepresentation by JHCB, we reversed the trial court's judgment as to appellants' common law fraud and negligent misrepresentation claims against JHCB. *Id.* As to the statutory fraud claim, we reversed the summary judgment in favor of JHCB because it failed to move for summary judgement on the statutory fraud claim, and affirmed the summary judgment in favor of Cheung and the PPOC because there was no evidence they made any misrepresentations to appellants prior to the signing of the sales agreement. *Id.* at 886–87, 893.

Appellants argue that "implicit in" our reversal of the trial court's summary judgment on their common law fraud claim against JHCB was the determination that "the disclaimer and merger provisions in the sales contract at issue here do not bar [appellants'] fraud claims as a matter of law" and, therefore the law of the case doctrine prevented the trial court from granting JNOV based on the disclaimer-of-reliance and merger clauses in the sales agreement. The law of the case doctrine is a principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *see also Gotham Ins. Co. v. Warren E&P, Inc.*, 455 S.W.3d 558, 562 n.8 (Tex. 2014) (under law of case doctrine, courts of appeal are ordinarily bound by their prior decisions if there is subsequent appeal in case); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012). The doctrine is based on public policy and is intended to achieve uniformity of decision, as well as judicial economy and efficiency. *Hudson*, 711 S.W.2d at 630; *Jacobs v. Jacobs*, 448 S.W.3d 626, 630 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Paradigm Oil, Inc.*, 372 S.W.3d at 182. The doctrine, which has a goal of putting an end to litigation by narrowing the issues in successive appeals, applies to questions of law but not fact. *Hudson*, 711 S.W.2d at 630; *Jacobs*, 448 S.W.3d at 630. The doctrine does not foreclose the consideration of legal questions not present in the first appeal, *Gotham Ins. Co.*, 455 S.W.3d at 562 n.8, and does not necessarily apply when either the issues or the facts

–14–

presented at a successive appeal are not substantially the same as those in the previous appeal. *Hudson*, 711 S.W.2d at 630. Application of the doctrine is flexible and must be left to the discretion of the court "under the particular circumstances of each case." *Gotham Ins. Co.*, 455 S.W.3d at 562 n.8; *see also Killingsworth v. Hous. Auth. of City of Dallas*, 447 S.W.3d 480, 490–91 (Tex. App.—Dallas 2014, pet. denied); *Jacobs*, 448 S.W.3d at 630.

We noted in *Bever Properties II* that appellants had made arguments in their brief concerning their reliance on JHCB's alleged misrepresentations. *Bever Properties II*, 355 S.W.3d at 892. However, we did not construe appellees' motion as seeking traditional summary judgment on the ground appellants were precluded by the sales agreement from relying on any misrepresentation and did not address either the disclaimer-of-reliance or merger clauses in the sales agreement.[11] Accordingly, the law of the case doctrine did not preclude the trial court from granting JNOV based on the disclaimer-of-reliance clause. *See Hudson*, 711 S.W.2d at 631 (prior opinion holding that one of terms of contract was a covenant and a fact issue existed precluding summary judgment did not prevent sellers on remand from "asserting other defensive theories, including those attacking the validity of the contract, at a subsequent trial on merits"); *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, No. 05-11-01014-CV, 2013 WL 3355199, at *3 (Tex. App.—Dallas July 2, 2013, pet. denied) (mem. op.) (law of the case doctrine does not apply to new summary grounds that were neither presented nor decided in prior appeal).

*Sufficiency of the Evidence*

Relying on *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) and *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008), appellants next contend there was sufficient evidence to support the jury's findings they relied on JHCB's

---

[11] We note that appellants, apparently recognizing our opinion in *Bever Properties II* did not address the disclaimer-of-reliance and merger clause in the sales agreement, argued during the hearing on the motions for JNOV that if appellees "felt so strongly about [the disclaimer-of-reliance clause argument], they should have filed a Summary Judgment on it a long time ago." The trial court responded, "They didn't."

–15–

misrepresentations and omissions. Appellants specifically argue there is not a per se rule that a disclaimer-of-reliance clause or a merger clause in a contract precludes a fraudulent inducement claim and, based on the totality of the circumstances, the disclaimer-of-reliance and merger clauses in the sales agreement do not bar their claims for common law or statutory fraud.

The trial court did not state in its memorandum opinion the bases for granting JNOV on Taylor, P.A.'s fraud and statutory fraud claims, and appellants do not address Taylor, P.A. separately from Bever Properties on appeal. When the motion for JNOV presents multiple grounds upon which JNOV should be granted and the trial court does not specify the reason for granting JNOV, the appellant has the burden of showing the judgment cannot be sustained on any of the grounds stated in the motion. *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Hodges v. Rajpal*, 459 S.W.3d 237, 243 (Tex. App.—Dallas 2015, no pet.). We must affirm the JNOV if Taylor, P.A. failed to challenge each of the possible grounds as an appellate issue. *See Brooks v. Mass Marketing Ltd.*, No. 03-07-00658-CV, 2010 WL 1404739, at *2 (Tex. App.—Austin Apr. 6, 2010, pet. denied) (mem. op. on reh'g); *see also Monk v. Dallas Brake & Clutch Serv. Co.,* 697 S.W.2d 780, 783–84 (Tex. App.—Dallas, 1985, writ ref'd n.r.e.) (appellant failed to carry its burden if it does not address each ground on which trial court might have granted motion for JNOV). Appellees sought JNOV on the common law and statutory fraud claims on grounds Taylor, P.A. could not have justifiably relied on oral statements by JHCB, Taylor, P.A. was barred by the disclaimer-of-reliance and merger clauses in the sales agreement from claiming it relied on any misrepresentations by JHCB, and there was no evidence to support the damages awarded for common law and statutory fraud. Because Taylor, P.A. failed to challenge on appeal a possible ground on which the trial court could have granted JNOV, that the evidence was insufficient to support the damages that were awarded, we must affirm the JNOV as to Taylor, P.A.'s claims for fraud and statutory fraud.

As to Bever Properties, in its memorandum order, the trial court set out two bases for granting JNOV on Bever Properties' claims for fraud and statutory fraud. The trial court determined that Bever Properties acknowledged in writing that (1) it was aware the condominium unit was subject to the rules and regulations of the condominium regime, and (2) it was not relying upon any oral statements allegedly made by the seller, JHCB. The trial court concluded that, as a matter of law, Bever Properties was barred from claiming (1) it did not know the property would be subject to the rules and regulations of the condominium regime, and (2) that it relied upon alleged oral statements by JHCB that Bever Properties could have the sign it desired in the location it desired.

In their brief, appellants challenge only the second basis for the trial court's ruling, that Bever Properties is barred from claiming it relied on the alleged misrepresentations. Bever Properties does not complain about the trial court's finding that, based on the documents it signed while purchasing the condominium unit, it acknowledged the property was subject to a condominium regime. *See Atlas Props, Inc. v. Rep. Waste Servs of Tex., Ltd.*, No. 02-11-00332-CV, 2012 WL 579442, at *2 (Tex. App.—Fort Worth Feb. 23, 2012, no pet.) (mem. op.) ("[A] party cannot justifiably rely on oral statements that are directly contradicted by the express, unambiguous terms of the written agreement as a matter of law." (citing *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en banc) (op on reh'g)); *see also Miller Global Properties, LLC v. Marriott Intern., Inc.*, 418 S.W.3d 342, 348 (Tex. App.—Dallas 2013, pet. denied) ("Where a contract between the parties directly contradicts the alleged misrepresentations, there can be no justifiable reliance."). Bever Properties had the burden of challenging each possible ground on which the trial court granted JNOV. *See Sbrusch*, 818 S.W.2d at 394. By failing to challenge the trial court's finding that Bever Properties acknowledged in writing that it was aware the

–17–

condominium unit was subject to the rules and regulations of the condominium regime, Bever Properties waived any error by the trial court in granting JNOV on the common law and statutory fraud claims. *Id.*; *Brooks*, 2010 WL 1404739, at \*2; *see also Monk,* 697 S.W.2d at 783–84.

However, even considering appellants' argument on appeal that the disclaimer-of-reliance and merger clauses in the sales agreement do not preclude their ability to rely on JHCB's alleged misrepresentations and omissions, we cannot conclude the trial court erred by granting the JNOV. In general, a contract is subject to avoidance on the ground of fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011). In order to prevail on either a common law or statutory fraud claim, appellants were required to prove reliance on a misrepresentation or omission by JHCB. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 181, 182 (reliance is an element of fraud and statutory fraud). However, the parties can agree in the contract to waive reliance on another party's statements. *Id.* "The contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding." *Schlumberger Tech. Corp.*, 959 S.W.2d at 179.

To be enforceable, a contractual disclaimer of reliance must contain language that is clear and unequivocal. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333, 334, 336. The disclaimer is invalid if this threshold requirement is not satisfied. *Id.* at 336–37; *Berry v. Encore Bank*, No. 01-14-00246-CV, 2015 WL 3485970, at \*10 (Tex. App.—Houston [1st Dist.] June 2, 2015, no pet. h.) (mem. op.). If the clarity requirement is satisfied, the court should then consider the circumstances surrounding the contract's formation. *Italian Cowboy Partners, Ltd*, 341 S.W.3d at 337 n.8. Factors that are relevant to the inquiry are whether:

> 1. the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute;
>
> 2. the complaining party was represented by counsel;

3. the parties dealt with each other in an arm's length transaction; and

4. the parties were knowledgeable in business matters.

*Forest Oil Corp.*, 268 S.W.3d at 60.[12] Whether a contract's disclaimer-of-reliance provision negates an assertion of fraud as a defense is a question of law reviewed de novo. *Italian Cowboy Partners, Ltd*, 341 S.W.3d at 333.

Clarity of Agreement

The disclaimer-of-reliance clause in the sales agreement stated that JHCB would not be bound by any statement or representation unless it was contained in the sales agreement or in an addendum or exhibit to the agreement. By signing the sales agreement, Bever Properties acknowledged that it executed the sales agreement solely on the basis of JHCB's representations in the sales agreement, including any addendums and exhibits to the agreement, and "not in reliance on any other statement or representations attributed to" JHCB. It also agreed the sales agreement constituted the entire agreement between the parties and could not be modified except by a written instrument signed by both parties. We conclude the disclaimer-of-reliance and merger clauses clearly and unequivocally provide that Bever Properties was disclaiming reliance on any representation or statement made by JHCB that was not included in the sales agreement. *See Forest Oil Corp.*, 268 S.W.3d at 54, 60–61 (enforcing clause in contract that stated party was not relying upon any statement or representation of any party being released and that party was relying upon its own judgment);[13] *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, No. 05-14-00125-CV, 2015 WL 3451675, at *9 (Tex. App.—Dallas May 29, 2015, no pet.) (concluding disclaimer of reliance clause that stated party signed agreement "voluntarily *and without reliance*

---

[12] The court also noted that if an agreement is a "once and for all" settlement of claims, this may constitute an additional factor for rejecting fraud-based claims. *Forest Oil Corp.*, 268 S.W.3d. at 58. This potential factor is not a consideration in this case.

[13] In contrast, the *Italian Cowboy Partners, Ltd.* court determined a contractual provision acknowledging the other party had made no representations or promises other than those stated in the agreement did not clearly and unequivocally disclaim reliance on any misrepresentations. 341 S.W.3d at 336.

upon any statement or representation by any party, lawyer or third party" was clear and unequivocal).

<u>Negotiation of the Terms of the Contract that Are the Subject of the Current Dispute</u>

The next factor is whether "the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute." *Forest Oil Corp.*, 268 S.W.3d at 60. The record is sparse about negotiations between the parties over the terms of the sales agreement. However, although there is no evidence about whether the disclaimer-of-reliance and merger clauses were negotiated by the parties, both Cathy and Jesse testified they discussed with representatives of JHCB, including Huffman, whether the property would be subject to a condominium regime and the type of signage they would be permitted to have on the property. After these discussions, the sales agreement was signed stating the property would be subject to a condominium regime and would be governed by the documents creating that regime.

This Court has concluded that, under *Forest Oil Corp.*, the "'topic of the subsequent dispute' is the specific contract term being asserted against the party claiming fraud." *Leibovitz*, 2015 WL 3451675, at *7. In this case, appellees assert, in response to appellants' common law and statutory fraud claims, that the sales agreement specifically stated the property being purchased would be subject to a condominium regime and Jesse disclaimed reliance on any other representations. The evidence established that, after the Taylors specifically discussed with JHCB the existence of the condominium regime and the type of signage that would be allowed on the property, Jesse signed an agreement that acknowledged the property would be subject to a condominium regime, a provision which was contrary to his requested terms, as well as a clear and unequivocal disclaimer-of-reliance provision as to any representations made by JHCB that were contrary to the terms of the sales agreement. *See Kilpatrick v. Kilpatrick*, No. 02-12-

–20–

00206-CV, 2013 WL 3874767, at *8 (Tex. App.—Fort Worth July 25, 2013, pet. denied) (mem. op.) *see also Forest Oil Corp.*, 268 S.W.3d at 58 (parties' negotiations addressed environmental matters which were an important part of the contract). Accordingly, we cannot conclude the disclaimer-of-reliance clause was boilerplate or that the terms of the sales agreement that are the topic of this dispute were not the subject of negotiations between the parties.

### Representation by Counsel

There is no evidence the Taylors were represented by counsel before Jesse signed the sales agreement. However, as evidenced by its representation by an attorney shortly after purchasing the condominium and throughout eleven years of litigation, it is clear Bever Properties, and by extension the Taylors, had access to an attorney. Their decision not to protect their interests by having counsel advise them on the sales agreement should not bar enforcement of the disclaimer-of-reliance clause. *See Leibovitz*, 2015 WL 3451675, at *8; *RAS Grp., Inc. v. Rent-A-Center E., Inc.*, 335 S.W.3d 630, 640 (Tex. App.—Dallas 2010, no pet.) (fact that parties had lawyers they regularly used and had opportunity to consult with them supported enforcement of disclaimer of reliance clause even though parties testified they could not remember if they submitted agreement to their lawyers).

### Arm's Length Transaction

The evidence established the Taylors and JHCB had no relationship prior to the Taylors approaching JHCB about purchasing the condominium unit. Further, appellants do not contend the transaction between JHCB, on the one hand, and the Taylors, and subsequently Bever Properties, on the other hand, was anything other than an arm's length transaction.

### Knowledgeable in Business Matters

The final applicable factor is whether the parties were knowledgeable in business matters. At the time Bever Properties purchased the condominium, it was owned fifty percent by Cathy

and fifty percent by Jesse and had been formed for the purpose of asset protection. The evidence established the Taylors had successfully operated a dental practice since 1986, including leasing a property for a number of years. Cathy, the business manager for the practice, developed the practice's brand, Hollywood Smiles, and testified the practice was at the "forefront" of advertising for a dental practice and in offering innovative practice techniques. Further, they hired a consultant to assist them with expanding the practice's brand recognition and patient base. The sign manufacturer hired by the Taylors, who had worked with between nine and ten thousand doctors and dentists, testified he had met only one person who was as knowledgeable as Cathy about how to run a practice.

Cathy and Jesse looked for an appropriate property to which to relocate the dental practice for a number of years before purchasing the condominium unit at issue in this case. They knew the attributes they desired in a location, including the type of signage they believed would benefit the practice and that they did not want to be part of a condominium regime. When they first appeared at the closing on the condominium unit, they recognized the closing documents stated the property would be subject to a condominium regime. They refused to complete the transaction until after they spoke to Huffman and a "friend" about the documents.

Cathy testified she understood the "sign overlay" districts in the City of Plano and that there could be a maximum of two stand-alone signs on the property. After their request for a variance was denied by the City of Plano, the Taylors understood that, because it was a legal non-conforming sign, the hotel sign on the property could not be replaced after it was removed from the property. After the Taylors removed the hotel sign, the City of Plano approved the request to build the stand-alone sign the Taylors desired.

Cathy had been involved in three or four real estate closings prior to the closing on the condominium unit. She testified she was knowledgeable about the value of the condominium unit and gave her opinion about the condominium unit's value at the time of trial.

We conclude the evidence established the Taylors were sufficiently knowledgeable in business matters to support the enforcement of the disclaimer-of-reliance clause against Bever Properties.

## Conclusion

Considering the relevant factors, we conclude, based on the totality of the circumstances, that the disclaimer-of-reliance clause in the sales agreement is enforceable and negates the reliance element in Bever Properties' common law and statutory fraud claims against JHCB. Accordingly, the trial court did not err by granting JNOV to JHCB on Bever Properties' common law and statutory fraud claims.

We resolve appellants' first issue against them

### *Conspiracy to Commit Fraud*

In their second issue, appellants argue that because the jury's common law fraud finding against JHCB should be reinstated, its corresponding conspiracy to commit common law fraud findings against Cheung and the PPOC should also be reinstated, and the evidence is sufficient to support the jury's conspiracy findings. A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). There is no independent liability for a civil conspiracy. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 668 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Rather, the defendant's liability for civil conspiracy depends on its participation in some underlying tort for which the plaintiff seeks to hold as least one of the named defendants liable. *Tilton v Marshall*, 925

S.W.2d 672, 681 (Tex. 1996) (orig. proceeding). If the underlying tort claim fails, the conspiracy claim fails as well as a matter of law. *Wingert v. DeVoll*, No. 03-09-00440-CV, 2010 WL 3271744, at *6 (Tex. App.—Austin Aug. 20, 2010, pet. denied) (mem. op.); *see also Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex. App.—Dallas 1989, writ denied).

Because appellants cannot recover on their claim of common law fraud against JHCB, they cannot prevail on a conspiracy to commit common law fraud against Cheung and the PPOC. *Wingert*, 2010 WL 3271744, at *7; *O&B Farms, Inc. v. Black*, 300 S.W.3d 418, 421 (Tex. App.—Houston [14th] 2009, pet. denied) (sustaining appellants' legal sufficiency challenge to civil conspiracy finding because "without a fraud finding, there is no underlying tort to support a civil conspiracy finding"). Accordingly, the trial court did not err by granting JNOV on appellants' claim that Cheung and the PPOC participated in a conspiracy to commit common law fraud. We resolve appellants' second issue against them.

### Breach of Fiduciary Duty

In their third issue, appellants complain the trial court erred by granting JNOV on Taylor, P.A.'s breach of fiduciary duty claim against Cheung. In their live pleading at the time of trial, appellants jointly asserted a claim for breach of fiduciary duty against Cheung and Kirwan and, after incorporating the factual allegations in the petition, alleged Cheung and Kirwan:

> as officers and directors, owe duties to [appellants]. Some of those duties include a duty against self-dealing, and duties of honesty, fidelity, and loyalty. They breached those duties, which resulted in injury to [appellants] and benefit to [appellees]. (See Property Code 82.103)[.] Accordingly, [appellees] seek a judgment for actual damages according to proof and as provided by law.

The jury found Cheung breached his fiduciary duties to both Bever Properties and to Taylor, P.A., and awarded Taylor, P.A. $328,280 in total damages on the claim. The jury found Bever Properties suffered no damages from the breach of fiduciary duty. The trial court granted JNOV

–24–

on Taylor, P.A.'s breach of fiduciary duty claim on the ground that, because Taylor, P.A. was not a unit owner under the TUCA, Cheung did not owe Taylor, P.A. a fiduciary duty.

Section 82.103(a) of the TUCA provides that "[e]ach officer or member of the board is liable as a fiduciary of the unit owners for the officer's or member's acts or omissions." TEX. PROP. CODE ANN. § 82.103(a).[14] An officer or director of the unit owners' association may be liable to the association or any unit owner for monetary damages for an act or omission occurring in the person's capacity as an officer or director that breached the officer's or director's fiduciary duty to the association or a unit owner. *Id.* § 82.103(f)(1). A "unit owner" is:

> a declarant or other person who owns a unit, or a lessee of a unit in a leasehold condominium whose lease expires simultaneously with any lease the expiration or termination of which will remove the unit from the condominium, but does not include a person having an interest in a unit solely as security for an obligation.

*Id.* § 82.003(a)(24). A "declarant" is a person, or group of persons acting in concert, who as part of a common promotional plan, offers to dispose of the person's interest in a unit not previously disposed of or reserves or succeeds to any special declarant right. *Id.* § 82.003(a)(10).

Bever Properties was the unit owner of the condominium. Taylor, P.A. leased the condominium unit from Bever Properties, but there is no evidence that its lease will expire simultaneously with "any lease the expiration or termination of which will remove the unit from the condominium." Accordingly, under the statutory definitions, Taylor, P.A. is not a unit owner to which Cheung, as an officer or member of the Board of the PPOC, owed a fiduciary duty pursuant to section 82.103(a) of the TUCA.

Taylor, P.A. does not argue the trial court erred by determining Cheung did not owe a fiduciary duty directly to Taylor, P.A. pursuant to section 82.103 of the TUCA. Rather, Taylor, P.A. contends (1) Cheung owed a fiduciary duty to Bever Properties under section 82.103 of the

---

[14] Under the TUCA, "board" means "the board of directors or the body, regardless of name, designated to act on behalf of the association." TEX. PROP. CODE ANN. § 82.003(a)(4).

TUCA; (2) Taylor, P.A. has a cause of action against Cheung under section 82.161(a) of the TUCA because it was adversely affected by Cheung's breach of his fiduciary duty to Bever Properties; and (3) interpreting section 82.103 and 82.161(a) together, Cheung owed fiduciary duties derivatively to Taylor, P.A. though Bever Properties. Taylor, P.A. further assets that, even if the jury charge was "technically incorrect" by including questions to the jury only on a direct breach of fiduciary duty claim, the error was harmless, and judgment should be rendered in accordance with the jury's verdict. Cheung responds that Taylor, P.A. failed to plead, or request questions to the jury on, a cause of action under section 82.161(a) of the TUCA. We agree with Cheung.

Section 82.161(a) of the TUCA provides: "If a declarant or any other person subject to this chapter violates this chapter, the declaration, or the bylaws, any person or class of persons adversely affected by the violation has a claim for appropriate relief." *Id.* § 82.161(a). The historical and statutory notes to section 82.161 indicate it is similar to section 4-117 of the Uniform Condominium Act (UCA).[15] *See* TEX. PROP. CODE ANN. § 82.161. The comments to section 4-117 provide that the section creates a general cause of action or claim for relief for the failure of a declarant or any other person subject to the UCA's provisions to comply with the UCA. It indicates such persons could include "unit owners, persons exercising a declarant's rights of appointment pursuant to Section 3-103(d), or the association itself." UNIF. CONDO. ACT § 4-117, cmt. A "claim for appropriate relief" could include "damages, injunctive relief, specific performance, rescission or reconveyance if appropriate under the law of the state, or any other remedy normally availably under state law." *Id.* Section 82.161 of the TUCA, like section 4-117 of the UCA on which it is modeled, creates a general cause of action for a person who is

_____

[15] Section 4-117 of the Uniform Condominium Act states, in relevant part, "If a declarant or any other person subject to this Act fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief." UNIF. CONDO. ACT § 4-117 (1977).

adversely affected when a person subject to the TUCA violates the TUCA or the declaration or the bylaws of a condominium regime. TEX. PROP. CODE ANN. § 82.161(a).

Taylor, P.A. did not refer to section 82.161(a) of the TUCA in its petition, but argues that, interpreting section 82.161(a) and 82.103 together, a cause of action under section 82.161(a) based on a derivative fiduciary duty to Taylor, P.A. through Bever Properties may be inferred through its breach of fiduciary duty claim based on section 82.103. Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy, and what type of evidence might be relevant. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007). *see also* TEX. R. CIV. P. 45. Pleadings must give fair notice of the claim asserted and the relief sought to provide the opposing party with enough information to enable him to prepare a defense. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). Pleadings are sufficient if a cause of action may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (op. on reh'g); *see also In re Lipsky*, 460 S.W.3d at 590. In the absence of special exceptions, the petition should be construed liberally in favor of the pleader. *Boyles*, 855 S.W.2d at 601; *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.). However, a court may not use a liberal construction of the petition as a license to read into the petition a claim it does not contain. *Holden v. Holden*, 456 S.W.3d 642, 650 (Tex. App.—Tyler 2015, no pet.); *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In this case, we cannot reasonably infer that Taylor, P.A. intended to plead an independent cause of action under section 82.161(a) of the TUCA. Taylor, P.A.'s petition contained a specific cause of action for breach of fiduciary duty under which it was seeking to recover. That cause of action referred to section 82.103 of the TUCA. Nothing in appellants'

breach of fiduciary duty claim or other pleaded causes of action gave fair notice to Cheung that Taylor, P.A. was claiming "Cheung owes fiduciary duties derivatively to Taylor [P.A.] through Bever [Properties]" or that Taylor, P.A. was bringing a cause of action under 82.161(a) based on a derivative fiduciary duty theory.

A court's jurisdiction to render judgment is invoked by the pleadings, and a judgment unsupported by the pleadings is void. *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.); *see also Holden* 456 S.W.3d at 650. Therefore, a trial court's judgment must conform to the pleadings. TEX. R. CIV. P. 301; *Holden*, 456 S.W.3d at 650. Absent trial by consent,[16] a plaintiff may not be granted a favorable judgment on an unpleaded cause of action, *Marrs v. Smith P'ship v. D.K. Boyd Oil & Gas Co., Inc.*, 223 S.W.3d 1, 18 (Tex. App.—El Paso 2005, pet. denied) (citing *Oil Field Haulers Ass'n v. R.R. Comm'n*, 381 S.W.2d 183, 191 (Tex. 1964)), and judgment on an unpleaded cause of action is void. *In re S.A.S.*, 279 S.W.3d at 856.

We conclude that Taylor, P.A. failed to plead a cause of action under section 82.161(a) of the TUCA that Cheung owed a fiduciary duty derivatively to Taylor, P.A. through Bever Properties, and express no opinion on the viability of such a cause of action. Taylor, P.A. is not, however, entitled to judgment on this unpleaded cause of action and has not challenged the trial court's determination that, because Taylor, P.A. was not a unit owner, section 82.103 of the TUCA did not create a fiduciary duty between Cheung and Taylor, P.A. We resolve appellants' third issue against them.

**Punitive Damages and Attorney's Fees**

In their fourth and fifth issues, appellants argue the trial court erred by granting JNOV on the jury's award of punitive damages against Cheung and the PPOC and of attorney's fees on their statutory fraud claim against JHCB. However, the trial court rendered judgment that

---

[16] Taylor, P.A. has not claimed a cause of action under section 82.161(a) of the TUCA was tried by consent.

appellants take nothing on all their claims. Without actual damages, appellants were not entitled to recover punitive damages from Cheung or the PPOC. *See Hancock v. Variyam*, 400 S.W.3d 59, 71 (Tex. 2013). Further, because appellants were not the prevailing party on the statutory fraud claim against JHCB, they were not entitled to recover attorney's fees. *See Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 112 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("We have concluded, however, that [appellee] is not entitled to recover on his statutory-fraud claim; thus, he can no longer recover attorney's fees from [appellant].").[17] We resolve appellants' fourth and fifth issues against them.

## Conclusion

We conclude the trial court did not err by granting JHCB's motion for JNOV and Cheung and the PPOC's amended motion for JNOV. We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

131519F.P05

---

[17] *See also Wilhoite v. Sims*, 401 S.W.3d 752, 761 (Tex. App.—Dallas 2013, no pet.) (noting section 27.01(e) of business and commerce code provides for award of attorneys' fees to party prevailing on statutory fraud claim); *Blackman v. Jolly*, No. 05-99-00617-CV, 2000 WL 230329, at *5 (Tex. App.—Dallas Mar. 1, 2000, pet. denied) (not designated for publication) (party who did not prevail on statutory fraud claim was not entitled to recover attorney's fees).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BEVER PROPERTIES, LLC AND JESSE
M. TAYLOR, D.D.S., P.A., Appellants

No. 05-13-01519-CV      V.

JERRY HUFFMAN CUSTOM BUILDER,
L.L.C., A/K/A JERRY HUFFMAN
CUSTOM BUILDERS, L.L.C.; PLANO
PARKWAY OFFICE CONDOMINIUMS,
A/K/A PLANO PARKWAY OWNERS
ASSOCIATION; AND DR. JOJO
CHEUNG, D.D.S., D/B/A ESTHETIC
IMAGE DENTISTRY, Appellees

On Appeal from the 366th Judicial District
Court, Collin County, Texas,
Trial Court Cause No. 366-2512-04.
Opinion delivered by Justice Fillmore,
Justices Myers and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Jerry Huffman Custom Builder, L.L.C. a/k/a Jerry
Huffman Custom Builders, L.L.C.; Plano Parkway Office Condominiums, a/k/a Plano Parkway
Owners Association; and Dr. JoJo Cheung, D.D.S. d/b/a Esthetic Image Dentistry recover their
costs of this appeal from appellants Bever Properties, LLC and Jesse M. Taylor, D.D.S., P.A.

Judgment entered this 31st day of July, 2015.