# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.  03-24-00308-CV

**Texas Global Equity Fund XII, LLC, Appellant**

**v.**

**Breckenridge Development 2019, LLC, Appellee**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-23-002878, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Texas Global Equity Fund XII, LLC (TGE) appeals from the district court's order granting appellee Breckenridge Development 2019, LLC (BD19)'s motion to dissolve prejudgment writs of garnishment that TGE had obtained against 22 entities that TGE believed owed money to BD19.  In two issues on appeal, TGE argues that the district court abused its discretion by dissolving the writs of garnishment because (1) TGE had proven the statutory grounds for garnishment and (2) BD19's extrinsic grounds for dissolution of the writs of garnishment lacked any basis in law or fact.  For the following reasons, we will reverse the district court's order dissolving the writs of garnishment, render judgment reinstating the writs, and remand the case to the district court for further proceedings consistent with this opinion.

**BACKGROUND**

In April 2022, TGE, an Austin-based real-estate investment firm, loaned seven million dollars to BD19, an Austin-based real-estate development company. The loan agreement required BD19 to use part of the loan proceeds to pay off a pre-existing loan between BD19 and Frost Bank (the Frost Loan), and it also required BD19 to provide TGE with annual financial statements and compliance certificates, as well as signed monthly borrowing base certificates. TGE's managing director, Jared Mermis, testified at the hearing on the motion to dissolve that TGE "manages the life savings of several families," and it needed this financial information from BD19 "to monitor the collateral" used for the loan and "make sure it's intact and safe."

Mermis further testified that from November 2022 through May 2023, BD19 failed to provide TGE with any of the required monthly borrowing base certificates, as well as the annual financial statements and compliance certificates for fiscal year 2022. Additionally, BD19 had failed to pay off the Frost Loan as required by the agreement. On May 8, 2023, TGE made a formal demand on BD19 to cure these and other defaults. After the time to cure had passed, TGE received the following email from BD19 manager Dan Fuchs, in which Fuchs explained BD19's failure to file the required financial statements:

> With regard to the year-end financials, we have had a large amount of turnover on the accounting team over the last 6 months, and that coupled with incremental initiatives to secure additional short-term funding to continue the business as a going concern has created strain on the accounting team being able to complete the financial statements at the company's normal timeline.
>
> . . . .
>
> As previously mentioned, providing focus to securing funding to continue as a going concern has been top priority. Once we secure such short-term funding, we

2

plan to devote substantial time to finalizing our financial statements and sending out to you and other creditors.

BD19 failed to provide the required documents to TGE or otherwise cure its default. As a result, TGE accelerated the debt and demanded immediate repayment of the loan. BD19 failed to make payment.

TGE subsequently filed suit against BD19, seeking recovery of the principal loan amount plus interest, which at that time was $7,575,926.01. Shortly after filing suit against BD19, TGE also filed ex-parte applications for prejudgment writs of garnishment against 22 entities that TGE believed owed money to BD19. TGE sought garnishment from these entities because it had concerns regarding BD19's solvency moving forward. In a declaration attached to the applications for writs of garnishment, TGE manager Robert Gritz averred the following:

The debt that is the subject of the aforesaid suit is just, due, and unpaid.

Within my knowledge, Defendant does not possess property in Texas subject to execution sufficient to satisfy the debt. This garnishment is not sought to injure Defendant or Garnishee.

Prior to bringing suit, Plaintiff repeatedly made demands on Defendant to provide up to date financial information pursuant to the Loan Documents. Pursuant to the Loan Documents, Defendant covenanted to furnish Plaintiff with such information and statements, lists of assets and liabilities, tax returns, and other reports with respect to Borrower's financial condition as Lender may request from time to time. However, Defendant continually refuses to provide the demanded information. After making demand that Defendant cure such defaults, Plaintiff declared an Event of Default as a result of Defendant's failure to honor the Loan Documents and accelerated the debt making it then due and owing. Attached hereto as Exhibit A are true copies of the Loan Documents. Attached hereto as Exhibit B is Plaintiff's demand that Defendant cure its default. Attached hereto as Exhibit C is Plaintiff's Declaration of Default, Notice of Acceleration, and Demand for Payment.

Defendant's obligations under the Loan Documents are secured by (among other things) certain receivables and other personal property of BD 2019 more fully described in the Loan Documents and UCC financing statement ("Collateral").

On information and belief, Defendant is insolvent or about to become insolvent, and is struggling (if not failing) to pay debts as they come due. Further, Defendant is believed to be misappropriating Plaintiff's Collateral to fund its operations. On information and belief, Plaintiff's Collateral is being diminished by Defendant and Plaintiff is materially at risk of becoming undersecured or unsecured in toto.

ln the suit against Defendant, Plaintiff has alleged that the unpaid principal and interest is currently due to Plaintiff in an amount of $7,575,926.0l, together with interest, attorneys' fees, additional fees and costs of collection, and other costs which are continuing to accrue. As of May 30, 2023, $7,575,926.01 is just, due, and owing. Such debt is accruing interest at the rate of $3,452.05 per day.

The district court granted each of TGE's applications for writs of garnishment and made the following findings of fact regarding each garnishment order:

Plaintiff Texas Global Equity Fund XII, LLC, as Lender, and Defendant Breckenridge Development 2019, LLC, as Borrower, executed (1) a Loan Agreement dated April 26, 2022; (2) a Security Agreement dated Apri1 26, 2022; (3) a Term Promissory Note dated April 26, 2022; (4) a First Modification Agreement dated July 29, 2022; and (5) a Second Modification Agreement dated September 30, 2022 (collectively, and together with all other instruments and documents evidencing, securing, governing, guaranteeing or pertaining to the indebtedness, the "Loan Documents");

Defendant's indebtedness to Plaintiff pursuant to the Loan Documents became due on May 26, 2023, and is secured by, inter alia, certain accounts receivable of Defendant, including specifically Garnishee's indebtedness to Defendant;

Defendant is in default under the Loan Documents, and Defendant is indebted to Plaintiff in the liquidated sum of $7,515,926.01, which represents unpaid principal and interest.[1] Interest, attorneys' fees, additional fees and costs of

_____

[1] Some of the garnishment orders specified a different amount of principal and interest owed, specifically, $7,600,090.36. Although the record is unclear as to the reason for this

4

collection, and other costs are continuing to accrue;

Defendant's debt to Plaintiff is just, due, and unpaid;

Within Plaintiff's knowledge, Defendant possesses no property in Texas subject to execution sufficient to satisfy the debt;

If Garnishee's indebtedness to Defendant is not immediately garnished, the collateral which secures payment of Plaintiff's claims will likely be dissipated by the Defendant to Plaintiff's prejudice; and

The garnishment is not sought to injure Defendant or Garnishee.

Texas Global coordinated service of the garnishment writs on each of the garnishees through the Travis County Constable Precinct 5. The record reflects that the writs were personally delivered to the Texas Secretary of State as the registered agent for service of process for seven of the garnishees.

Subsequently, BD19 filed a motion to dissolve the writs of garnishment. In its motion, BD19 admitted that it had executed the loan documents, that TGE had sent BD19 notice declaring that BD19's indebtedness under the loan documents was due, and that the loan had not been repaid. BD19 asserted that the garnishments were wrongful and must be dissolved because (1) "many of the alleged facts on which they are based are unsupported and untrue"; (2) the garnishments "were sought to injure BD19 and, if not dissolved, will cause irreparable injury" to BD19; and (3) "they have not been and, could not be, duly served on the garnishees."

---

difference, we note that these garnishment orders were issued on later dates, which would have affected the amount of interest that had accrued.

5

The district court held a two-day hearing on BD19's motion. At the hearing, the loan agreement and other documents were admitted into evidence, TGE managing director Mermis testified as to the circumstances surrounding the loan and alleged default by BD19, and another witness for TGE testified as to the letter that TGE sent to BD19 notifying it of the default. No witnesses testified for BD19, although BD19 offered and the district court admitted into evidence a declaration of BD19 manager Fuchs, who averred that "not all fees owed to BD 2019 were or are part of the 'Collateral' pledged to TGE under the Loan Agreement or Security Agreement"; that not all garnishees owed fees to BD19 with respect to the "applicable projects" under the loan documents, that many of the garnishees "do not owe any fees" to BD19, and that some or all of the fees to be earned by BD19 on certain projects "were pledged or assigned to others"; and that the writs of garnishment were causing "substantial harm" to BD19 by harming its relationships with its business partners and depriving BD19 of fees to which it was entitled.

At the conclusion of the hearing, the district court took the matter under advisement and, approximately four months later, granted BD19's motion. The district court later made findings of fact and conclusions of law, including that TGE had failed to prove the statutory grounds for garnishment, that the garnishments were harmful to BD19, that TGE had misrepresented the scope of its collateral under the loan, and that TGE's service to the non-resident garnishees was improper. This appeal by TGE followed.[2]

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to dissolve a writ of garnishment for abuse of discretion. *Jacobs v. Jacobs*, 448 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.]

---

[2] We note that BD19 did not file an appellee's brief.

6

2014, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court has no discretion in determining what the law is or applying the law to the facts, and a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Thus, an abuse of discretion occurs when either (1) the trial court fails to analyze or apply the law correctly, or (2) the trial court could reasonably have reached only one decision and failed to do so. *Jaster-Quintanilla & Assocs. v. Prouty*, 549 S.W.3d 183, 188 (Tex. App.—Austin 2018, no pet.) (citing *Walker*, 827 S.W.2d at 839-40).

## APPLICABLE LAW

Garnishment is an ancillary proceeding brought by a judgment creditor (the garnishor) whereby the property, money, or credits of the judgment debtor (the debtor) in the possession of another (the garnishee) may be applied to payment of the final judgment against the debtor. *Zeecon Wireless Internet, LLC v. American Bank of Texas, N.A.*, 305 S.W.3d 813, 820 (Tex. App.—Austin 2010, no pet.) (citing *Bank One Texas, N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex.1992); *Beggs v. Fite*, 106 S.W.2d 1039, 1042 (Tex. 1937)). Garnishment proceedings in Texas are governed by Chapter 63 of the Texas Civil Practice and Remedies Code and by Rules 657 through 679 of the Texas Rules of Civil Procedure. *See* Tex. Civ. Prac. & Rem. Code §§ 63.001-.008; Tex. R. Civ. P. 657-679. Because garnishment is a creature of statute, garnishment proceedings cannot be sustained unless they strictly conform to the statutory requirements and related rules governing such proceedings. *Zeecon Wireless*

7

*Internet*, 305 S.W.3d at 816; *Walnut Equip. Leasing Co. v. J–V Dirt & Loam, a Div. of J–V Marble Mfg., Inc.*, 907 S.W.2d 912, 915 (Tex. App.—Austin 1995, writ denied).

"Either at the commencement of a suit or at any time during its progress the plaintiff may file an application for a writ of garnishment." Tex. R. Civ. P. 658. "Such application shall be supported by affidavits of the plaintiff, his agent, his attorney, or other person having knowledge of relevant facts." *Id.* "The application shall comply with all statutory requirements and shall state the grounds for issuing the writ and the specific facts relied upon by the plaintiff to warrant the required findings by the court." *Id.* Under the Civil Practice and Remedies Code, a prejudgment writ of garnishment is available if a plaintiff sues for a debt and makes an affidavit stating that: (1) "the debt is just, due, and unpaid"; (2) "within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt"; and (3) "the garnishment is not sought to injure the defendant or the garnishee." Tex. Civ. Prac. & Rem. Code § 63.001(2).

After a writ of garnishment has issued, "[a] defendant whose property or account has been garnished or any intervening party who claims an interest in such property or account, may file a motion to dissolve or modify the writ of garnishment, the order directing its issuance, or both for any grounds or cause, extrinsic or intrinsic." Tex. R. Civ. P. 664a. A hearing must be held on the motion, and "[t]he writ must be dissolved unless, at such hearing, the plaintiff proves the statutory grounds relied upon for the writ's issuance." *Id.* However, "[a]part from proof of the grounds supporting issuance of the writ, the party moving to dissolve the writ bears the burden to prove the ground for dissolution." *Walnut Equip.*, 907 S.W.2d at 915, 917.

8

## DISCUSSION

### Statutory grounds for garnishment

In its first issue, TGE argues that the district court erred when it found that TGE failed to prove the statutory grounds for garnishment. We will address each ground in turn.

#### *Just, due, and unpaid*

The first ground is that the debt be "just, due, and unpaid." Tex. Civ. Prac. & Rem. Code Ann. § 63.001(2)(A). In a suit for breach of contract, this means that the debt must be "liquidated, that is, the amount of the claim is not contingent, is capable of being definitely ascertained by the usual means of evidence, and does not rest in the discretion of the jury." *Cleveland v. San Antonio Bldg. & Loan Ass'n*, 223 S.W.2d 226, 228 (Tex. 1949); *BBX Operating, LLC v. American Fluorite, Inc.*, No. 09-19-00279-CV, 2021 WL 3196513, at *3 (Tex. App.—Beaumont July 29, 2021, pet. denied) (mem. op.).

Here, the amount of the debt was liquidated. TGE manager Robert Gritz averred that as of May 30, 2023, the unpaid principal and interest on the loan was in amount of $7,575,926.01 and that such debt was accruing interest at the rate of $3,452.05 per day. These amounts are supported by the loan documents, which specify the principal amount of the loan and the interest rate, and confirmed by the testimony of TGE managing director Mermis.

TGE also proved that the amount of the debt was due and unpaid. The terms of the loan required BD19 to, among other things, provide TGE with annual financial statements, compliance certificates, and borrowing base certificates. The loan specified that failure to provide these documents would constitute an "event of default" and that upon occurrence of default, "the entire unpaid balance of principal of the Notes, together with all accrued but unpaid

9

interest thereon . . . shall, at the option of Lender, become immediately due and payable without further notice . . . ." TGE provided undisputed evidence that it provided BD19 with notice of default and a demand to cure, that BD19 failed to cure, and that, consequently, TGE accelerated the maturity of the loan and demanded payment. Mermis testified that BD19 failed to make payment as required by the terms of the loan, and BD19 admitted that it had not repaid the loan.[3]

### *Insufficient property to satisfy the debt*

The second ground is that "within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt." Tex. Civ. Prac. & Rem. Code § 63.001(2)(B). In its response to TGE's Requests for Admissions, BD19 admitted that it does not currently maintain or possess aggregate unencumbered liquid assets in an amount of $4,000,000 or more. Thus, by BD19's own admissions, it did not possess sufficient property to satisfy the $7.5 million debt.

### *Not sought to injure*

The third ground is that "the garnishment is not sought to injure the defendant or the garnishee." Tex. Civ. Prac. & Rem. Code § 63.001(2)(C). Mermis testified that TGE "manage[s] the life savings of several families," that "it's our job to monitor the collateral and make sure it's intact and safe," and that without access to BD19's financial documents, TGE cannot "monitor the loan to make sure BD 2019 is complying with its collateral obligations." At the time TGE filed suit and sought garnishment, BD19 had refused to honor its loan obligations and BD19's manager had stated in an email that the company "had a large amount of turnover on

---

[3] We note that even absent acceleration, the loan fully matured by its own terms on March 31, 2024, and was due to be repaid no later than that date. The district court dissolved the writs of garnishment after that date, on April 30, 2024.

the accounting team over the last 6 months, and that coupled with incremental initiatives to secure additional short-term funding to continue the business as a going concern has created strain on the accounting team being able to complete the financial statements at the company's normal timeline." Mermis denied that TGE was seeking to injure BD19:

> Q. In seeking a garnishment in this case, is TGE attempting to harm BD 2019?
>
> A. We're not looking to injure BD 2019. We're simply trying to recover our collateral and make sure that our families' investments are covered by the collateral. And it's a—it's a very rapidly—we're worried that it's a very rapidly dissipating collateral reserve.
>
> Q. Right. And has—is—is that worry that it's a rapidly dissipating collateral reserve, is that a concern that you have because of your communications with BD 2019?
>
> A. It is. Dan Fuchs mentioned to us that he had going concern issues early in the year, late in 2022, and that was obviously of severe concern to us.
>
> . . . .
>
> Q. What does that mean when you see somebody talking about they're—they're having going concern issues?
>
> . . . .
>
> A. Put simply, it means the business is worried that they're going to go out of business.

Thus, TGE established that in seeking garnishment, it was trying to protect itself from the possibility—implicitly acknowledged by BD19's manager—that BD19 was struggling to stay in

business and might not have the funds necessary to repay the loan. BD19 provided no contrary evidence demonstrating that TGE had sought garnishment to injure BD19.[4]

In sum, we conclude that TGE proved the statutory grounds for garnishment. The district court abused its discretion in concluding otherwise.

We sustain TGE's first issue.

**Extrinsic grounds for dissolution of writ**

In its second issue, TGE argues that BD19 failed to carry its burden of proof regarding its alleged extrinsic grounds for dissolution. These grounds are that TGE misrepresented the scope of its collateral under the loan; that BD19 proved the affirmative defenses of ratification, waiver, and offset; and that TGE's service of the writs of garnishment on out-of-state garnishees was improper.

### *Scope of collateral*

In each of its applications for garnishment, TGE stated that "Garnishee's indebtedness to Defendant constitutes an express and material portion of the collateral securing Defendant's debt to Plaintiff." The district court found this statement to be untrue "in many

---

[4] The district court found that the garnishment orders were harmful to BD19 in that they hampered with its ability to operate, interfered with its business relationships, and threatened its ability to pay normal operating expenses. However, the inquiry is not whether garnishment is harmful to the defendant, as that is an inevitable consequence of garnishment, but whether the garnishment was "sought to injure" the defendant. *See* Tex. Civ. Prac. & Rem. Code § 63.001(2)(C); *see also BBX Operating, LLC v. American Fluorite, Inc.*, No. 09-19-00279-CV, 2021 WL 3196513, at *5 (Tex. App.—Beaumont July 29, 2021, pet. denied) (mem. op.). BD19 provided no evidence that TGE sought garnishment for any reason other than to recover the money that it had loaned to BD19, which it was permitted to do by the terms of the loan agreement. The district court similarly found that the garnishment orders "impaired the rights of non-parties that have an interest in the excluded shared collateral and/or funds that are not unpaid contracted fees or collateral." The district court did not specify the non-parties whose rights it found to be impaired, and the evidence presented at the hearing does not support this finding.

instances." More specifically, the district court found that "only seven of the twenty-two Garnishees contracted to pay fees to BD2019 with respect to any of the seven Applicable Projects [specified in the loan agreement], and those fees may be deferred and/or may not be presently owed"; and "at least eight of the Garnishees do not owe any fees to BD2019 because their projects have already been completed or have yet to begin."

However, these findings misconstrue the nature of the garnishment inquiry. "Garnishment is a statutory proceeding whereby the property, money, or credits of a debtor in the possession of another are applied to the payment of the debt." *Aycock v. EECU*, 510 S.W.3d 636, 638 (Tex. App.—El Paso 2016, no pet.) (citing *Bank One, Tex., N.A.*, 824 S.W.2d at 558). The statute applies broadly to most funds owed to a debtor and does not require the garnishor to possess any security interest or collateral in the funds that are being garnished. *See Bechem v. Reliant Energy Retail Servs., LLC*, 441 S.W.3d 839, 843 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[T]he garnishor steps into the shoes of the debtor and may enforce against the garnishee whatever rights the debtor could have enforced had the debtor sued the garnishee directly.").

Moreover, a Rule 664a hearing, which is what occurred here, "is a distinct proceeding from the writ of garnishment proceeding between the garnishor and garnishee." *Swiderski v. Victoria Bank & Tr. Co.*, 706 S.W.2d 676, 678 (Tex. App.—Corpus Christi-Edinburg 1986, writ ref'd n.r.e.). "When a defendant debtor seeks to dissolve a prejudgment writ of garnishment, the plaintiff must prove the grounds relied upon for its issuance," *id.* at 678-79, but "a Rule 664a motion does not require the garnishor to prove that the garnishee is indebted to the debtor," *Thompson v. Harco Nat'l Ins. Co.*, 997 S.W.2d 607, 613 (Tex. App.—Dallas 1998, pet. denied); *Swiderski*, 706 S.W.2d at 678. To the extent that any garnishee did not owe money

13

to BD19 at the time the writ of garnishment was served on it, the proper remedy was for the garnishee itself to file an answer to the writ of garnishment seeking discharge under Rule 666, which requires: (1) a denial that the garnishee is indebted to the defendant; (2) a denial that the garnishee has effects of the defendant; and (3) a denial of knowledge of third persons who may be indebted to the defendant or have effects of the defendant, or the names of such persons. *See* Tex. R. Civ. P. 666; *Rowley v. Lake Area Nat'l Bank*, 976 S.W.2d 715, 720 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). That is not what occurred here. Accordingly, the district court abused its discretion to the extent that it dissolved the writs of garnishment on grounds related to Rule 666 and the scope of TGE's collateral.

### *Affirmative defenses*

At the hearing, BD19 asserted the affirmative defenses of ratification and waiver.[5] Specifically, BD19 argued that TGE had ratified BD19's failure to file financial reports when BD19 tendered some of the required financial reports after the loan had accelerated and that TGE had waived the requirement that the loan proceeds be used to retire the Frost Loan. However, TGE's May 8 notice of default and May 26 declaration of default, both of which were admitted into evidence at the hearing, expressly provided that "Lender's acceptance of any amounts less than the full amount currently due Lender or the partial performance of any obligations have not, and will not . . . reinstate the Loan or cure any default or event of default under the Loan." Additionally, the terms of the loan agreement expressly provided that "no waiver of any provision" of the agreement "shall be effective unless the same shall be in writing and signed by Lender . . . ." BD19 provided no evidence of a signed writing from TGE waiving the express

---

[5] At the hearing, BD19 also mentioned the affirmative defense of offset but provided no explanation or evidence for why it would be entitled to an offset of the amount owed.

condition that the Frost loan be retired out of the loan proceeds, and TGE provided documentary evidence and testimony at the hearing that no such waiver had occurred. Accordingly, BD19 failed to prove its affirmative defenses and the district court abused its discretion to the extent that it dissolved the writs of garnishment on grounds related to those defenses.

### Service of process and jurisdiction

Finally, the district court found that TGE had not established that the court could exercise personal jurisdiction over the nonresident garnishees or that those entities were properly served through the Texas Secretary of State.

Rule 663 provides that "[t]he sheriff or constable receiving the writ of garnishment shall immediately proceed to execute the same by delivering a copy thereof to the garnishee, and shall make return thereof as of other citations." Tex. R. Civ. P. 663. The record reflects that the writs of garnishment were personally delivered by a Travis County Constable to the garnishees' registered agent for service of process in Texas, and proof of service was admitted into evidence at the hearing. For seven of the garnishees, the agent was the Texas Secretary of State. This is permitted under the Texas long-arm statute for nonresidents who engage in business in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.044(b). The record reflects that service on the nonresident garnishees was done properly under the statute. *See id.* § 17.045. As for the court's jurisdiction over the nonresident garnishees, garnishment proceedings are quasi in rem. *See Zeecon Wireless Internet, LLC*, 305 S.W.3d at 816. "A quasi in rem proceeding is an action between parties where the object is to reach and dispose of property owned by them or of some interest therein." *Bodine v. Webb*, 992 S.W.2d 672, 676 (Tex. App.—Austin 1999, pet. denied). Only three of the nonresident garnishees contested the court's jurisdiction over them, and their counsel acknowledged at the hearing that they contracted with

15

BD19 and made payments to BD19 pursuant to those contracts. For purposes of this garnishment proceeding, that is sufficient for the district court to exercise quasi in rem jurisdiction over the nonresident garnishees. *See Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros del la Republica Mexicana, S.C.*, 923 F.2d 380, 391 n.17 (5th Cir. 1991) ("Constitutional due process concerns require a connection between the garnished debt (or attached property) and the subject matter of the action before a court can exercise quasi in rem jurisdiction."). The district court abused its discretion to the extent that it dissolved the writs of garnishment on these grounds.

We conclude that BD19 failed to prove its extrinsic grounds for dissolution of the writ. The district court abused its discretion in concluding otherwise.

We sustain TGE's second issue.

## CONCLUSION

We reverse the district court's order dissolving the writs of garnishment, render judgment reinstating the writs, and remand the case to the district court for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Justices Triana, Theofanis, and Crump

Reversed, Rendered, and Remanded

Filed: April 17, 2026

16